## OBER, ATTWATER & CO. VS. PENDLETON.

1. CONVEYANCE: *Escrow.*
   A deed to real estate deposited with a third person, to be delivered to the grantee on payment of notes executed by the grantees in consideration of the conveyance, operates as an escrow; and the conveyance thereof by the grantee, or sale under execution against him, prior to the delivery of the deed, is inoperative.

2. PORTION: *Charge on land for payment of.*
   Where a parent, in order to make provision for several children, executed a deed to real and personal property in favor of his two sons, and deposited the same as an escrow to be delivered on payment by the grantees of certain notes executed by them to other children of the grantor for their portions, it was held that the notes constituted a charge on the land enforceable in equity,

APPEAL from *Arkansas* Circuit Court.

Hon. HENRY B. MORSE, Circuit Judge.

*Garland,* for appellant.

*Pindalls, contra.*

WALKER, J.:

This is a suit in Chancery, brought in the Arkansas County Circuit Court, by a part of the children and heirs of Robert N. Douglass, against the other heirs of Douglass and those claiming under them, to subject certain lands owned by Robert N. Douglass in his life time, to the payment of certain notes executed by Alfred O. Douglass and William F. Douglass, two of the sons of Robert N. Douglass, to several of his other children.

The material allegations of the bill are, that on the first day of January, 1857, Robert N. Douglass was the owner of about twelve thousand acres of land in Arkansas county, some 70 or 80 negroes, a number of mules, horses and farming utensils. That he was far advanced in life, and had a large family of children living near him, that he had before that time made advances in

land and otherwise to several of his children, leaving his wife Evaline, his son William F. and his daughters, Ellen, Rose and Emma, to be provided for; that he was indebted to the amount of $20,000.

That in order to make payment of this debt and to provide for his future support, and to make provision for his son William F., and his daughters, he contracted with his sons, Alfred O. Douglass and William F. Douglass, to take the lands, negroes, mules, horses and farming utensils, which he then owned, for the consideration that they should pay his debt of $20,000, leave him and his wife in possession of the mansion house, yard and house-servants, and that Alfred O. Douglass should execute to them his note for $10,000, due 25th Dec. 1859. To Ellen $10,000, payable 25th Dec., 1860. To Rose $10,000, due 25th Dec., 1861, in consideration of which he was to have an undivided half of the land, negroes and other property.

That William F. Douglass should be entitled to $20,000 out of his half of the property, as an advancement to him, and that he execute his note to Emma for $10,000, to be paid Dec. 25th, 1862. That each of the notes should bear 8 per cent. interest, payable annually.

That Robert N. Douglass for this consideration, executed to said Alfred O. and William F. Douglass, a deed for said land, negroes and personal property, and delivered the same to his daughter Ellen, to be held by her as an escrow, and upon full and final payment of all of said several sums, to be delivered to the grantees. That the notes have not been paid, nor has the deed ever been delivered.

That Alfred O. and William F. Douglass, entered upon and took possession of the land, negroes and other property.

Robert N. Douglass died intestate in 1863.

Ober, Attwater & Co. vs. Pendleton.

That the equitable interest of Alfred O. Douglass in the land was sold at sheriff's sale, and William F. Douglass became the purchaser, and now holds the same. . That thereafter William F. Douglass conveyed his interest in the land to Ober, Attwater & Co.. to secure a debt due to them.

That before the sheriff's sale of the interest of Alfred O. Douglass in the land, he had conveyed them in trust to William F. Douglass, to secure an indebtedness to Frances Dye, now by marriage Frances Walker.

All of these are made parties to the suit and brought before the court,

Defendants Ober, Attwater & Co. appeared and answered, and also file a cross bill, in which they set up their claim as mortgagees, aver that the lands were of less value than the negroes and other property, and the lien in favor of complainants only exists to the interest of the value of the lands. Aver that Alfred and William were tenants in common. That William F. Douglass was entitled to one-half, and could only be charged to the extent of his liability to Emma, to whom he had executed his note, that most of this note had been paid. This brief statement of the ground of defense may suffice to a proper understanding of the case made by the bill, and of the defense set up, which, from the view which we take of the case, can in no event avail the defendants.

The case was set for hearing upon bill, answers, exhibits and depositions, as to part of the defendant's, and by confession for want of answers as to others.

The Court below decreed in favor of complainants, declared a specific lien upon the land for the payment of notes executed by Alfred O. and William F. Douglass to the several heirs as above contracted, ascertained the balance due on each note, and decreed

payment, and that the claims of the defendants, after satisfaction of these notes, given as the consideration of the conveyance from Robert N. Douglass to Alfred O. and Wm F., should be taken and held as a second lien upon the lands, upon any balance that might be after satisfaction of the first lien debts.

From this decree defendants have appealed.

Without referring to the evidence at length, it may suffice to say that it fully and circumstantially sustains the allegations of the bill, and shows the amount paid on the notes.

The defense set up seems to be predicated upon the assumption that the deed from Robert N. Douglass to his sons, Alfred and William, was effective without delivery to them, to convey to them an estate in the land, but such is not the case. It was distinctly averred in the bill of complaint, and clearly proven by the depositions of both Alfred O. and William F. Douglass, who were the grantees, that the deed never was delivered to them or either of them, but was delivered by their father to his daughter Ellen, to be held by her until the notes were fully paid, and then and not before to be delivered to the grantees. The witness, William F. Douglass, says: "At the same time of the execution of the notes, my father executed a deed for the land described in the bill, which was placed in the hands of Ellen Douglass, which was to be delivered to us after the payment of all of these notes, which deed I do not remember to have ever seen until about the commencement of this suit, except at the time it was written and signed; the deed was never delivered to me nor to A. O. Douglass."

Alfred O. Douglass, another witness, states: "That the deed was never delivered to us, I have never seen it" (referring to himself and William F. Douglass). This evidence stands uncontradicted, and shows that this deed was delivered as an escrow. Washburn, in his work on Real property, vol. 3, page 270,

says : "If the delivery depends upon the performance of a condition it is an *escrow*, and, if to be delivered at a particular day it is not a present conveyance. It has no effect as a deed until the condition has been performed, and no estate passes until the second delivery."

Kent says, vol. 4, page 454: "Until the condition is performed and the deed delivered over, the estate does not pass, but remains in the grantor." Sustained by this authority and upon principle, we must hold that William F. Douglass and Alfred O. Douglass, the grantees, acquired no legal title to the lands in controversy, and could, according to the terms of the delivery of the deed to Ellen Douglass, acquire none until after the payment of all of the notes, executed in payment of the consideration of the land; and, as a consequence, that the deed of mortgage executed by William F. Douglass to Ober, Attwater & Co. was inoperative; and such also was the effect of the sale made by the Sheriff of the interest of Alfred O. Douglass, and of his deed of trust to William F. Douglass, because at the time these conveyances and sales were made the legal title was still in Robert N. Douglass, and must so remain until the performance of the conditions upon which the deed was to be delivered. After the payment of these notes and the delivery of the deed, vitality is given to the deed to communicate title to William F. and A. O. Douglass, the effect of which, in relation to their former conveyances, is not properly the subject of consideration in this case.

The decree is certainly as favorable to the defendants, under the state of the case, as is permissible.

Let the decree be in all things affirmed and remanded to the Court below, to be proceeded in its final execution.