BROWN *v.* ALLBRIGHT.

Opinion delivered December 8, 1913.

1.  APPEAL AND ERROR—FINDINGS OF CHANCELLOR.—The finding of the chancellor will not be disturbed on appeal, when it is not clearly against the weight of the evidence.   (Page 398.)

2.  GIFTS—DELIVERY IN ESCROW—COMPLIANCE WITH CONDITION—REVOCATION.—While a voluntary grantor or donor may revoke his gift at any time before the compliance by the opposite party with the

conditions upon which it is to be delivered, yet when the grantee or donee has partially complied with such conditions, the donor can not then withdraw his donation without giving the donee an opportunity to fully comply. (Page 402.)

Appeal from Clay Chancery Court; *Charles D. Frierson,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

This is a suit by appellant against appellees as trustees of the Methodist Episcopal Church, South, at Peach Orchard, Arkansas, to foreclose a mortgage on the church lot and house executed by the trustees to appellant. The lot on which the church building was afterward erected was formerly donated to the church by appellant. This deed, in the habendum clause, contained a provision to the effect that the trustees were to hold the same "so long as the same shall be used and occupied as a Methodist church." This deed was accepted by the trustees and recorded in April, 1906. Appellant thereafter loaned to appellees $620, evidenced by promissory notes. In August, 1906, the trustees proceeded to erect a church house on the lot. Some time in 1910 the trustees and some of the other members of the church informed appellant that they were unable to obtain a loan from the church extension board to pay off the mortgage to appellant, and appellant thereupon, according to the testimony for the appellees, executed to them a warranty deed, and placed it in the Peoples Bank of Peach Orchard, Arkansas, with instructions to deliver it to the trustees when the mortgage debt was paid.

According to the testimony of appellant, he executed the warranty deed and placed it in the bank to be delivered to appellees when the debt was satisfied, but that it was understood and agreed at the time with the trustees that the mortgage debt was to be paid at once. This was in the latter part of the year 1910. On the 14th day of April, 1911, the Ladies' Aid Society of the church paid $100 on the mortgage debt, which was credited on one of the notes. About the 15th of July, 1912, nothing

more having been paid, appellant went to the bank and requested that the deed be delivered to him, which was done, and he destroyed it.

In addition to the mortgage debt, appellant had an open account against the church which was not secured by the mortgage. There had been several payments made previous to the execution of the last deed which appellant credited on the open account. The appellant contended that at the time these payments were made nothing was said as to which debt the payments should be applied on. The appellees, on the other hand, contended that the payments were to be applied on the mortgage debt. The appellant credited his open account with certain donations that he had made himself.

Appellant asked for foreclosure of the mortgage for the full amount of the mortgage less the credit that had been endorsed thereon.

The appellees, in their answer, which they made a cross complaint, asked that certain payments be credited on the mortgage debt, and not on the account, and that appellant be required to execute and deliver a deed with general warranty to the church lot upon the payment to him of the balance due on the mortgage debt.

The court found that appellees had paid the sum of $185.50, which had not been credited on the mortgage debt, and that the sum $490.80 was due the appellant. The court ordered the property sold if the latter sum was not paid within twenty days, and that before the sale, appellant should execute a warranty deed to the church property in favor of the appellees and deliver it to the commissioner appointed to make the sale, and that if appellees should pay the amount of the judgment the commissioner should deliver the deed to them. Other facts stated in the opinion.

*F. G. Taylor,* for appellant.

Without specific directions to apply the payments made, to a certain debt, appellant had the right to apply them to whichever debt he saw proper. 72 Ark. 625.

The lot in question here being a voluntary gift to the church, the case does not come under the rule ''that the grantor of a deed in escrow can not revoke or withdraw it without the consent of the grantee.'' 83 Ill. 267; 76 N. Y. App. Div. 534-545; 20 Cyc. 1213, and cases cited in note 89.

Appellees failed to comply with the conditions upon which the deed was deposited, within the time, and the grantor was entitled to withdraw it. 16 Cyc. 577, and cases cited in note 5; *Id.* 584, and cases cited in note 44; *Id.* 178, and cases cited in note 15.

A parol agreement for the conveyance of land, without consideration, is void and can not be enforced. 43 N. Y. 550.

*C. T. Bloodworth,* for appellee.

On a question of fact, the chancellor having found in favor of appellees, and there being evidence to sustain the finding, same will not be disturbed on appeal. 42 Ark. 246; 49 Ark. 465; 76 Ark. 252; 99 Ark. 495; 101 Ark. 180; 103 Ark. 478.

The only condition made was that the deed was to be delivered to the trustees when they paid off the mortgage and was put in the hands of the depositary for this purpose, therefore it was a deposit and not an escrow, and was irrevocable by appellant. 16 Cyc. 568B, and notes.

WOOD, J., (after stating the facts). 1. The appellant contends that the court erred in finding that the appellees had paid $185.50 on the mortgage debt, and in holding that this amount should be credited thereon instead of on the open account.

Appellant does not question the correctness of the amount of the payments which were credited on the indebtedness. He only contends that the court erred in placing the credits on the notes instead of letting them remain on the open account where appellant had placed them. But we are of the opinion, after considering the exhibits which were introduced in evidence and ab-

stracted fully in the brief for the appellees, in connection with the testimony of the appellant and of the witnesses on behalf of the appellees, that the court did not err in crediting the amount named on the mortgage debt. These exhibits and the other testimony convince us that the parties understood at the time that these payments were to go on the mortgage debt. The witnesses who made the payments testified that they directed that they be placed on the church debt. Appellant, when asked if the parties directed what application should be made of the payments said, ''I don't know; they told me only just to apply them on the church debt. I don't know that they specified anything particular; only just gave it to me to apply on the business.''

While it is true that the testimony shows that the appellant had an open account against the church in addition to the mortgage debt, the chancellor evidently found that the witnesses, when they told the appellant that the money was to go on the church debt, meant the mortgage debt, and we think, taking all the testimony together, that the chancellor was correct in so interpreting the testimony. It could serve no useful purpose to set out at length the testimony of the witnesses concerning this matter, but it suffices to say that the finding of the chancellor on this point is not clearly against the weight of the evidence.

There is testimony from which the chancellor might have found that the notes and mortgage that were executed on August 10 covered the appellant's open account to that date as well as the cash that he advanced at that time. The mortgage and notes, on their face, show the sum of $620 which appellees owed appellant, but there was testimony showing that appellees only received from appellant at that time the sum of $450 in cash; so that the balance must have been used to apply on the open account of appellees with appellant that had accrued prior to that time.

2. The appellant contends that the court erred in

requiring appellant to execute a warranty deed to the land embraced in the mortgage.

In regard to the execution and delivery of the second deed, which was a warranty deed without any limitations or reservations, the appellant testified as follows: "I heard rumors that there was complaint about the reservation clause in the (first) deed, and some of them came to me and told me that they wanted the deed changed, and that if I would make a warranty deed they would take it up right away. Mrs. Allen, for one, told me that they would raise the money at once if I would make a good deed. Allbright (one of the trustees) also said that they would raise the money and pay out the mortgage right away if I would make a deed, and my wife and I made a deed to them and I placed it in the bank at Peach Orchard with the understanding that if they paid the mortgage off the deed was to be delivered to the church people. In the meantime the Ladies' Aid paid $100 on the mortgage, and the same is credited on the back of the notes. The deed lay in the bank something like eighteen months, and the conditions in the church changed from what they used to be so that I went and took the deed down and destroyed it. I considered that they had ample time to pay it if they intended to."

In another place in his testimony he says: "I first fell out with the church when they tried to carry that road business into the church along some time last summer. The preacher came and jumped on me about that road, and after that he preached a sermon that was pointed to reflect on some of the young ladies of the town and I objected seriously to it and withdrew from the church. The church failed to have the same peace and quiet it did before the circumstances changed to such a degree that I had my doubts that the church would be used as a place of worship, and consequently I withdrew the deed. I had no agreement to put up the deed and just put up the deed with their promise to pay. I now refuse to give them a warranty deed, even though they pay every cent that is due."

The testimony of the trustees and one Mrs. Allen tended to show that they informed appellant that they were unable to raise the necessary subscriptions to pay off the mortgage debt on account of the reservation in the first deed. They told him that the people understood that he had given the church lot, but they found, upon investigation, that the deed contained this reservation clause which prevented them from getting money from the Church Extension Board to pay off the mortgage. They informed appellant that they were willing to pay the debt if he would make a warranty deed, but that they would not pay any more on it unless he would make a warranty deed. Appellant stated that he had not intended to defraud anybody by the way he drew up the deed, and if they wanted a warranty deed he would make them one and deposit it in the bank and when they paid the debt off he would authorize any one who was cashier of the bank to turn the deed over to the trustees of the church. He also stated that at that time the Ladies' Aid had $100 in money, and if they would pay the $100 and the men of the community $100 that he himself would donate $100.

Appellant made a warranty deed, which was satisfactory to the trustees, and deposited it in the bank, the cashier stating that it was his understanding that it was held to be delivered when the mortgage debt was settled. The deed was executed some time in November or December, 1910. On the 14th day of April, 1911, the Ladies' Aid Society paid $100 on the mortgage debt, which appellant credited on the notes. On the 15th of July, 1912, appellant withdrew the deed from the bank without consulting the trustees or obtaining their consent to its withdrawal.

The testimony shows that other sums were paid which he accepted. Mrs. Allen, among other things, stated that they had been informed that appellant had made and deposited the second deed or they would not have been trying to raise the money. They had not endeavored to raise the money before that time because everybody they asked did not want to help until they got

a·good deed. After the deed was deposited the people helped more liberally. "There was no time fixed in which payment was to be made."

The preponderance of the evidence shows that at the time the second deed was executed and deposited in the bank there was no time fixed in which the mortgage debt should be paid. The depositing of the deed and the written receipt of the payment of $100 take the case out of the statute of frauds. It was not a parol contract for the conveyance of land, but, as we construe it, an executed contract by a deposit of the deed which conveyed the title to appellees, to take effect when the mortgage debt was paid. It was evident that at the time appellant made the deposit of the deed with the cashier of the bank he intended that it should pass entirely beyond his control, and it was only necessary in order to effectually convey the title to appellees, that they should pay off the mortgage debt.

While it is true that both deeds evidenced gifts of the appellant of the land in controversy, yet the deposit of the deed in the bank to be delivered upon the payment of the debt made the gift complete when that event should occur, and since appellant accepted the payment of $100, and other payments, knowing that they would not have been made except upon the condition that the second deed was to be delivered upon the payment of the mortgage debt, he could not withdraw the deed without giving the appellees an opportunity to comply with the conditions upon which the deed was deposited in the bank. The grantor, after the appellee had partially complied with the conditions upon which the deed was deposited was under obligations to allow the deed to remain in the bank for them.

Says Chief Justice Shaw, in *Foster* v. *Mansfield*, 3 Met. 412, 37 Am. Dec. 154, "Where the future delivery is to depend upon the payment of money, or the performance of some other condition, it will be deemed an escrow. * * * Still, it will not take effect as a deed until the second delivery; but when thus delivered it will take effect

by relation from the first delivery." See *Grilley* v. *Atkins*, 78 Conn. 386, 2 Atl. 337, 4 L. R. A. (N. S.) 816.

While a voluntary grantor or donor may revoke his gift at any time before the compliance by the opposite party with the conditions upon which it is to be delivered, yet when the grantee or donee has partially complied with such conditions to the acceptance of the donor or grantor the latter can not then withdraw his donation without giving the donee an opportunity to fully comply. See *Mechanics Nat. Bank* v. *Jones*, 76 N. Y. App. Div. 534, 78 N. Y. Supp. 800, 175 N. Y. 518, 67 N. E. 1085.

Appellees, under the evidence, had acquired rights under the deed which could not be forfeited without giving them an opportunity to pay off the mortgage debt.

The decree is therefore correct, and it is affirmed.