BONDURANT *v.* ENIS.

Opinion delivered March 6, 1922.

MINES AND MINERALS—OIL AND GAS LEASE—BREACH OF CONTRACT.— Where defendant executed an oil and gas lease to plaintiff and delivered it to a bank to be held in escrow until plaintiff's attorney should approve the abstract of title, and the title was disapproved because defendant had previously executed an oil and gas lease of same land to another, plaintiff acquired no rights in the lease which justified him in contracting to assign it, and he had no right of action against defendant for failure of title.

Appeal from Union Chancery Court; *J. Y. Stevens,* Chancellor; affirmed.

*Patterson & Rector,* for appellant; *George Vaughan,* counsel.

It is said: "Where a person enters into a contract to give a lease and he has neither title to the land to be leased nor power to execute a lease, the person contracting with him has a right to, and may, recover substantial damages from him for the breach of the contract." Thornton, The Law of Oil and Gas, § 333 and authorities cited. Is not the same thing true where the party having

title to the land executes a lease thereon which he knows
he has no right to execute because of a prior, valid and
subsisting lease, where the contract is wholly unexecuted,
and there has been no possession on the part of the buyer?
11 Ark. 58; 85 *Id.* 289; 86 *Id.* 443; 20 *Id.* 424; 114 *Id.* 436.

*McNalley & Kitchen,* for appellee.

All the essential elements of an escrow are here
present. The agreement between appellant and appellee
was not an executory contract of sale, but an escrow for
the conveyance of the oil and gas rights in the lands. 16
Cyc. 561, C. C. note 6; 89 Ark. 191.

Appellant had no rights or interests in the oil and
gas rights in the land which he could sell, assign or other-
wise dispose of, until the question of title was fully
settled, and the lease delivered to him. 30 Ark. 61; 16
Cyc. 576 "A" and cases cited, note 3; Devlin on Real Es-
tate, § 322; 30 Wis. 644; 16 Cyc. 577, note 5; 7 Colo. App.
360; 16 Cyc. 564.

SMITH, J. The complaint in this cause contained al-
legations to the following effect: The defendant Enis
being the owner of certain land in Union County, Ar-
kansas, on the 1st day of May, 1920, executed and de-
livered to one Frank Phillips, trustee, an oil and gas
lease thereon. This lease was filed for record, but, in
recording it, two errors were made, the land was mis-
described, and the lessor's signature was omitted from
the record. An abstract of title covering the land thus
leased would, by reason of the recorder's error, fail to
show the existence of this lease. The defendant Enis
knew of this error in the record, and knew an abstract
would show a clear title, unincumbered by the lease, al-
though he knew that he had leased the same and had re-
ceived the money therefor, and that the attempt to lease
the same again would be a fraud. Notwithstanding these
facts, defendant Enis entered into the following contract
with plaintiff Bondurant:

"Escrow Agreement.

"State of Arkansas, County of Union.

"Know all men by these presents: That W. R. Enis, Jr., party of the first part, and R. Bondurant, party of the second part, witnesseth:

"It is agreed and understood that the party of the first part have this day leased to second party the following described lands, situated in Union County, Arkansas, to-wit: Southwest quarter of northwest quarter of section 24, township 17 south, of range 16 west. Second party has this day placed in escrow in the First National Bank of El Dorado, Arkansas, a draft for the sum of $19,000 dollars, which said draft is attached hereto, said draft and the original lease is attached to this agreement and shall remain in the bank aforesaid, until the first party has turned over to second party an abstract of title covering the above described lands, second party is granted forty-eight hours to examine title. It is agreed and understood that the said bank is to turn over to first party the said draft and second party the said lease upon said second party's attorney having declared the title good and valid.

"This done and signed this, the 14th day of January, A. D. 1921.

"W. R. Enis, Jr., Party of the First part.

"R. R. Bondurant, Party of the Second Part.

"J. D. Slade, Notary Public."

The abstract called for by this contract was delivered to plaintiff's attorney, who pronounced the title good upon an examination thereof, and the parties were about to close the deal when, by coincidence, plaintiff Bondurant overheard a conversation which caused him to examine the records, which he found had been corrected to properly reflect the prior lease. The facts therefore were that defendant Enis had no title to the oil and gas rights he was proposing to lease, a fact well known to him at all times. The complaint further recites that, in reliance upon his contract set out above and in expecta-

tion of receiving a valid and enforceable lease, plaintiff Bondurant had entered into a contract for the assignment of said lease at a profit of $3,000, for which sum he prayed damage by reason of defendant's inability to deliver the lease as called for in the contract.

A demurrer was sustained to this complaint, and the plaintiff has appealed.

It is the insistence of plaintiff that, when one enters into a contract for the sale and delivery of an oil and gas lease, on property which he at the time does not own, and knows that he does not own, or on which he has no right to execute a lease, because of a prior valid and subsisting lease thereon, of which he has knowledge, and when the contract is wholly unexecuted, and there has been no possession on the part of the buyer, a cause of action exists against the seller for a breach of contract. In support of this position, plaintiff cites certain of our cases where a recovery of damages was awarded for the breach of executory contracts to convey land. But we think these cases are inapplicable here. Plaintiff never became the owner of the lease upon which he predicates his cause of action. The agreement in relation thereto was an escrow agreement. The parties so expressly designated it; and while it is true that the name given an agreement by the parties is not conclusive of its character, we find nothing in its provisions to indicate that it was misnamed. Upon the contrary, we think the provisions of the agreement establish its character as an escrow agreement. It is there expressly provided that the lease, and the draft attached thereto, shall remain in the bank, the depository, "until the first party has turned over to second party an abstract of title covering the above described lands," and forty-eight hours were given for the examination of the title. The agreement not only contemplated an examination of the title, but such an examination was made, and before the escrow agreement was discharged the discovery was made that there was

a failure of title. The purpose of the escrow agreement was to afford time to examine the title, and that purpose was accomplished, and the plaintiff was saved from purchasing a worthless lease.

The plaintiff's contract to assign the lease was prematurely made. He had no title to the lease at the time he contracted to assign it.

In the case of *Ober* v. *Pendleton,* 30 Ark. 61, this court, in considering a deed which had been delivered as an escrow, quoted with approval the following statement of the law from Washburn on Real Property, p. 270: "If the delivery depends upon the performance of a condition, it is an escrow, and, if to be delivered at a particular day, it is not a present conveyance. It has no effect as a deed until the condition has been performed, and no estate passes until the second delivery." See also *Scott* v. *State Bank,* 9 Ark. 36; *Chandler* v. *Chandler,* 21 Ark. 95.

Here there was to be no sale until, upon the examination to be made, within the time limited, the title was found to be good and valid, and the bank, as depository or escrow agent, could not, prior to that time, have delivered the lease.

In the case of *Daggett* v. *Daggett,* 143 Mass. 516, the Supreme Court of Massachusetts said: "When a deed is delivered merely as an escrow, to take effect upon the performance of some condition by the grantee in the future, no title passes until the condition has been performed. The transaction is incomplete. It is not the grantor's deed until the second delivery. Even if the grantee obtains possession of it before the condition has been performed, yet it is not the grantor's deed, and he may avoid it by pleading *non est factum.* The grantee cannot acquire the title by gaining possession of the deed by theft, by fraud, or by the voluntary act of the depositary, but only by performance of the condition. The depositary has no authority to waive such performance, and an unauthorized delivery by him of the deed which

he holds in escrow is entirely ineffectual to pass the title. *Wheelwright* v. *Wheelwright*, 2 Mass. 447, 452; *Foster* v. *Mansfield*, 3 Met. 412; *O'Kelly* v. *O'Kelly*, 8 Met. 436; *Calhoun* v. *American Emigrant Co.*, 93 U. S. 124, 127; *Watkins* v. *Nash*, L. R. 20 Eq. 262; 3 Washb. Real Prop. (5th Ed.) 321.''

In the case of *Harkreader* v. *Clayton*, 56 Miss. 383, it was said: ''The final and complete act which makes a deed effectual is *delivery*. Whilst no specific formalities are necessary, the grantor must consent that the deed shall pass irrevocably from his control, and the grantee must accept it. If, from what occurs between grantor and grantee, a delivery and acceptance may be implied, it is equivalent to an actual delivery. It is the assent, express or implied, to the act, which gives it efficacy. *Morgan* v. *Hazlehurst Lodge*, 53 Miss. 674. But, if the grantor make and seal an instrument as his writing or escrow, and deliver it to a third person, to be by him delivered to the grantee upon some future event, and it be delivered accordingly, it is not the grantee's deed until the second delivery. If the grantee obtains possession of it before the event happens, the grantor may avoid it on the plea of *'non est factum.'* 3 Co. 35b, 36a; *Doe* v. *Knight*, 5 Barn. & Cross. 671; *Cecil* v. *Butcher*, 2 Jac. & W. 87.''

So here there was no delivery of the lease to the plaintiff. The second delivery required to validate the lease was never made, and therefore the plaintiff acquired no rights in the lease which justified him in contracting to assign it. 4 Kent. 454; Devlin on Real Estate, 3 Ed. § 321, 322; Tiffany on Real Property, 2nd Ed. § 462; 8 R. C. L. Title Deeds, § 594; Elliott on Contracts, § 3919.

The demurrer was therefore properly sustained, and that decree is affirmed.