FORD v. MOODY.

Opinion delivered November 2, 1925.

ESCROWS—PERFORMANCE OF CONDITION.—When a deed is delivered merely as an escrow, to take effect upon the performance of some condition by the grantee in the future, no title passes until the condition has been performed, and it is immaterial that the grantee obtains possession of the instrument before the condition is performed.

Appeal from Union Chancery Court, First Division; J. Y. Stevens, Chancellor; reversed.

R. M. Hutchins, Jordan Sellers, and Murphy, Mc-Haney & Dunaway, for appellant.

Mahony, Yocum & Saye and Marsh & Marlin, for appellees.

WOOD, J. On the 6th day of March, 1922, J. C. Moody and his wife, A. E. Moody, entered into what is denominated an "escrow agreement" with A. L. Ford, by the terms of which Moody and his wife agreed to sell to Ford commercial oil and gas leases on the north five-eighths of the NE¼ of the NW¼ of section 20, and the NW¼ of the SW¼ of section 17, township 17 south, range 14 west, in Union County, Arkansas, for a consideration of $4,500. Ford was to place his check in escrow in the First National Bank of El Dorado, Arkansas, in the sum of $500, and the Moodys were to place also in the bank an assignment of the lease held by them in the above lands. Ford was to have five days in which to examine the title, and, if

he found any defects therein, the Moodys were to have five days in which to cure the same, and, if they did not cure the same within that time, Ford was to have five additional days, if he desired, in which to cure any defects in the title. The Moodys were to deliver an abstract to Ford showing title of record to the property. The bank was made the escrow agent for all parties, and it was authorized to hold Ford's check for $500, and, in the event title was approved by him, upon the presentation of his check for an additional four thousand dollars, the bank was to deliver the lease and assignment of the lease to Ford and to deliver his checks to the Moodys. If the title was not approved by Ford, then the bank was to return the check for $500 to Ford and the leases to the Moodys. The agreement further provided that, if Ford accepted the title and failed to pay the additional $4,000, the bank was authorized to deliver Ford's check for $500 to the Moodys as a forfeit for his failure to comply with the contract. Accompanying the agreement was an oil and gas lease executed by Moody and wife to Ford for a consideration named therein of $3,000 covering the NW¼ of the SW¼ of section 17, T. 17 S., R. 14 W. Also accompanying the escrow agreement was an assignment executed by the Moodys to Ford of an original oil and gas lease which had been executed to J. C. Moody by Mary L. Murphy and her husband D. J. Murphy. The land embraced in this lease was described as the north five-eighths of the NE¼ of the NW¼ containing 25 acres more or less in Union County, Arkansas, but omitting to give the township and range. The assignment refers however to the page of the record in the recorder's office on which the original lease is recorded. The consideration named in this assignment was $1,500. The original lease and the assignment were executed in duplicate, and these duplicates were duly acknowledged. On the 7th of March, 1922, Ford had these duplicates recorded. On the 13th of March, 1922, Ford executed a release of the assignment by the Moodys assigning to him their interest in the lands contained in the Murphy lease, and on

March 16, 1922, he executed a release of the oil and gas lease which the Moodys had executed to him. In the meantime Ford had taken down his $500 check and had directed the bank to surrender the assignment and original lease to the Moodys. The Moodys recorded the same and proceeded to dispose of the lands mentioned therein to other parties who developed the lands, discovering oil and gas in large quantities.

This action was instituted on the 16th day of February, 1923, by Ford against the Moodys, and various parties claiming under them, to cancel the releases executed by Ford to the Moodys on the 13th and 16th of March and the subsequent conveyances under which the various parties claim an interest in the lands mentioned by mesne conveyances from the Moodys. Ford set up in his complaint the escrow agreement, and alleged that, at the time of this agreement and at the time of the execution by him of the releases above mentioned, he was a minor under the age of twenty-one years, and that he was still under that age, but that his disabilities had been removed; that the releases were executed by him on the 13th and 16th of March, 1922, under duress consisting of threats of personal violence and injury on the part of J. C. Moody and of his attorney, and actual personal violence on the part of Moody's attorney. He alleged that the releases on that account were void, as well as on account of the fact that he was a minor at the time of their execution. He set up and made exhibits to his complaint these instruments and also the various instruments under which the parties were claiming an interest in the lands through the Moodys. He tendered in court the sum of $4,500, the purchase price he agreed to pay the Moodys under the escrow agreement, and prayed that the releases and the mesne conveyances under which the parties deraigned title from the Moodys be cancelled, and that a master be appointed to state an account of the oil that had been produced on the lands described and that he have judgment therefor and for general relief.

Separate answers were filed, and it was admitted in the answers that the escrow agreement was executed and delivered as alleged in the complaint, and that the lease and the assignments were executed by the Moodys and deposited in the bank as alleged. The execution of the releases by Ford to the Moodys was also admitted, but it was denied that these releases were procured through duress and fraud. On the contrary, it was alleged that these releases were voluntary upon the part of Ford. It was denied that the Moodys failed to furnish an abstract as alleged, but they averred that they did furnish such abstract of title within the time provided, and alleged that Ford violated the contract by having the instruments, executed to him by the Moodys, recorded contrary to the escrow agreement. It was alleged that the Moodys discovered that the $500 check deposited with the bank under the escrow agreement was worthless, and that, after this discovery, they offered to carry out the agreement if Ford would deposit funds in the bank in lieu of his worthless check; that this offer was made after the time allowed by the escrow agreement for an examination of the title by the Moodys had expired. The answers alleged that Ford refused to make his check good by depositing any funds in the bank for the payment thereof, and that he requested the cashier of the bank holding the escrow agreement to deliver the same to the Moodys and to return to him his check, which was done, and that he thereupon announced that the trade was rescinded; that the escrow agreement and original papers attached thereto were returned to the Moodys. The answer set up that Ford had executed to one J. B. Bright an assignment of a part of the lands covered by the escrow agreement, and that they had caused his arrest on account thereof for false pretenses and fraud, and that, in order to avoid the consequences of criminal prosecution for this charge, he voluntarily withdrew the assignment to Bright and executed the releases to the Moodys. The answer denied that the releases were obtained by any threats, or any personal violence on

the part of the Moodys or their attorney towards Ford. It was admitted that their attorney had a personal difficulty with Ford, but they alleged that it was provoked by Ford's own insolent conduct toward the attorney. They admitted that, after the execution of these releases from Ford, they executed conveyances of the property mentioned therein to other parties, and alleged that the same had been by such parties developed from wild-cat territory to productive property worth some $200,000. The answers denied that Ford was a minor at the time the escrow agreement was entered into and at the time the releases were executed, and alleged that the allegations of his complaint that he was a minor and his tender of the original purchase price of the property were only for the purpose of taking an unconscionable advantage of the defendants. The other parties set up the defense of innocent purchasers for value. The prayer of the answers was that the complaint be dismissed for want of equity, and that exhibits "C" and "D" attached to the complaint be cancelled.

The chancellor found that the escrow agreement was valid, and that Ford was prevented from performing his contract thereunder and was compelled by duress and fraud on the part of the Moodys and their agents to execute the releases which he here seeks to cancel; that he was a minor and had disaffirmed, within the time prescribed by law, the surrender of his rights under the escrow agreement and the execution of the releases. The court found that these releases by Ford were void, not only as to the Moodys, but as to all persons holding under them, and proceeded thereupon to cancel the releases and all the conveyances executed by the Moodys to other parties and divested title out of them and quieted and confirmed title in Ford. The court further found that Ford was entitled to the oil that had been produced from the properties less the expense of producing same and appointed a master to state an account with directions to report his findings to the court for confirmation and approval.

The defendants appeal from the decree as it affects them, and the plaintiff Ford prayed an appeal from so much of the decree as adjudged that the defendants were entitled to credit for the amount they had expended in the development of the property.

There was testimony to warrant the court in finding that Ford was a minor at the time the escrow agreement was entered into and the instruments referred to therein were executed, and likewise that he was an infant at the time the releases were executed to the Moodys. But the court nevertheless erred in quieting and confirming title in Ford to the lands in controversy. If Ford has any right to the property in controversy, it must be by virtue of the escrow agreement. This is recognized by him in his complaint in which he sets up the escrow agreement as the contract under and through which he claims by virtue of an alleged breach of same by the Moodys. After setting up the escrow agreement, Ford alleged "that plaintiff fully complied with said contract, but that defendants, J. C. and A. E. Moody, declined and refused to comply with their part of said contract." Ford testified that, after the leases had been signed by the Moodys and turned over to him and the agreement signed and the money put up by check in the bank as escrow agent, he met J. C. Moody and his son Virgil, on the street late that afternoon, and they told him they had been offered more money for the leases and were going to sell them, and he filed the lease for record in order to protect himself and to keep the Moodys from selling. This testimony is positively contradicted by Moody and his son. But it is wholly immaterial whether it be true or false, for at most it constituted a mere assertion or threat on their part to the effect that they did not intend to be bound by the escrow agreement. This was not a breach of the escrow agreement on the part of the Moodys, but, if it were, it would not vest any title to the lands in controversy in Ford and give him the right to have spread of record the instruments which had been executed in duplicate by the Moodys. Under the escrow agreement

the instruments executed by the Moodys could only be delivered to Ford by the bank, the escrow agent, and upon compliance by Ford with the terms of the escrow agreement.

The undisputed testimony shows that, at the time Ford had the instruments recorded, the escrow agreement was still in force, and he had not complied with its terms. Therefore, there was no delivery to him of the instruments, and without a delivery of the instruments no right or title in the property conveyed therein passed to Ford. His act in having the instruments recorded while the escrow agreement was in force was a plain violation of the terms of that agreement, because, although it gave him no real title to the lands in controversy, it operated to becloud the title of the Moodys.

Learned counsel for Ford contend that the delivery of the escrow agreement and the instruments accompanying it to Ford was in fact a delivery to him of the oil and gas lease, inasmuch as the oil and gas lease and the assignment of the oil and gas lease on their face contain no conditions; that, such being the case, these instruments, thus delivered to him, vested in Ford, the grantee, a title beyond the power of the grantors to recall or challenge. This contention is unsound, and the argument predicated thereon is bottomed wholly upon a false premise, namely, that the instruments executed by the Moodys and attached to the escrow agreement were delivered to Ford, the grantee.

It is well settled by the authorities, our own among them, that a deed, absolute on its face, cannot be delivered to the grantee in escrow. *Campbell* v. *Jones,* 52 Ark. 493; *Wipfler* v. *Wipfler,* 16 L. R. A. 941, and numerous cases cited in note to that case. Counsel for Ford cite and rely upon these authorities, but they have no application whatever to the facts of this record, for the reason that there was no delivery of the instruments to Ford. On the contrary, Ford was simply the intermediary or chan-

nel through which the escrow agreement and the instruments executed thereunder and connected therewith were to be delivered to the bank as the escrow agent. As such agent it was to deliver the instruments according to the terms of the escrow agreement, and not otherwise. The fallacy of counsel's contention is in assuming that there was a delivery to Ford, the grantee, whereas the uncontroverted testimony shows that these papers, after their execution by the Moodys, were left by them with Ford, the express understanding being that he was to deposit the same with the bank as the escrow agent, to hold the same for the respective parties to the escrow agreement until the terms thereof were performed by them. Such was the effect of the testimony of J. C. Moody. Ford himself testified concerning this as follows: "I signed the escrow agreement in evidence here with J. C. Moody. J. C. Moody and I went to the bank together and put it in the bank. I had the lease in duplicate and recorded the duplicate to protect myself and to keep them from selling it over me." Under this testimony, therefore, it is a misapprehension both of law and fact to say that there was a delivery to Ford of the instruments under which he claims.

In *Maxwell* v. *Maxwell*, 98 Ark. 466, we held that, "there is no delivery unless what is said and done by the grantee and grantor manifests their intention that the deed shall at once become operative to pass the title to the land conveyed, and that the grantor shall lose dominion over the deed." See other cases there cited and also *Brown* v. *Allbright*, 110 Ark. 394; *Bray* v. *Bray*, 132 Ark. 438.

In *Bondurant* v. *Enis*, 152 Ark. 372, at page 376 we quoted from 143 Mass. 516, as follows: "When a deed is delivered merely as an escrow, to take effect upon the performance of some condition by the grantee in the future, no title passes until the condition has been performed. The transaction is incomplete. It is not the grantor's deed until the second delivery. Even if the grantee obtains possession of it before the condition has

been performed, yet it is not the grantor's deed, and he may avoid it by pleading *non est factum.*" 158 Ill. 567, and other cases cited in note to *Wipfler* v. *Wipfler,* 16 L. R. A. (N. S.) at page 944.

It is clear from the undisputed testimony that the instruments under which Ford claims title were never delivered to him, and his placing the instruments or a duplicate thereof on record before the same were delivered to him, whether he so intended it or not, was a legal fraud upon the rights of the Moodys. It vested no right or title whatever in Ford. Our conclusion therefore is that, upon the undisputed facts and the law applicable thereto, Ford acquired no title to the lands in controversy. Such being our conclusion, the other questions so elaborately argued in the briefs of counsel pass out. Hence we do not discuss them. The decree of the chancery court is reversed, and the cause is remanded with directions to dismiss the complaint of Ford for want of equity and to enter a decree cancelling Exhibits "C" and "D" to such complaint and quieting title to the lands in controversy in the Moodys and those who claim under them.