# FEBRUARY, 1946

### J. B. BELL ET AL V. W. L. RUDD.

No. A-651. Decided January 9, 1946.
Rehearing overruled February 6, 1946.
(191 S. W., 2d Series, 841)

*J. N. Saye,* of Longview, for petitioners.

It was error for the Court of Civil Appeals to hold that the lessor delivered the lease in question to the lessee with the intention that it pass from their control and vest title to said oil and gas in the lessee. Aggers v. Blackburn, 230 S. W. 424; Pelican O. & G. Co. v. Edson Petroleum Co. 123 S. W. (2d) 696; Capps v. Edwards, 180 S. W. 137; Holt v. Gordon, 107 Texas 137, 174 S. W. (2d) 1097.

*Jones & Jones,* of Marshall, *Weeks, Hankerson & Surles* and *Russell Surles,* all of Tyler, for respondent.

MR. JUSTICE SLATTON delivered the opinion of the Court.

Respondent W. L. Rudd brought an action against J. B. Bell and wife, Daisy Bell, and F. A. Fuller in trespass to try title to recover a seven-eighths oil and gas leasehold estate in 505.59 acres of land situated in Harrison County, Texas. The first count was an ordinary action in trespass to try title. In the alternative respondent pleaded that on May 2, 1944, Bell and wife sold to him an oil and gas lease for a consideration of $3.00 per acre, and on said date executed a lease on such land to him as leassee and delivered it to him with the agreement between the lessors and lessee that the lease should be delivered by the lessee to Cary Abney, an attorney at Marshall, Texas, and that said lease be held in escrow by him until the lessee should approve the title and pay the purchase price stipulated in the lease; that respondent Rudd was to have a reasonable time in which to examine the title and that before the expiration of such time J. B. Bell and wife repudiated their agreement by executing and delivering to F. A. Fuller an oil and gas lease on May 12, 1944, covering the same land. Respondent Rudd sought title and possession of the leasehold estate, for cancellation of the lease delivered by the Bells to Fuller, and in the alternative for specific performance of the contract between him and the Bells. Petitioners made the usual general denial and not guilty pleas to

the count in trespass to try title, and in answer to the alternative plea admitted the execution of the lease to Rudd and its delivery to him for the purpose of placing it in escrow with the third party, and alleged that only ten days were to be allowed respondent for examining the title. Petitioners further alleged that it was agreed if the purchase price for the lease was not paid within a ten-day period the lease was to be returned to them, and further alleged that Rudd breached the agreement in his failure to deliver the lease to the escrow agent and in failing to pay for it within the ten-day period. Petitioners Bell admitted the execution of the lease to Fuller, but averred that it was not made until after respondent Rudd had breached his agreement with the Bells. The trial court rendered judgment decreeing that W. L. Rudd have specific performance of the lease contract from the Bells to him, and cancelled the lease to Fuller. On appeal the Court of Civil Appeals at Texarkana affirmed the judgment of the trial court. 189 S. W. (2d) 22.

The evidence is practically without dispute. It shows that J. B. Bell and wife, on May 2, 1944, executed an oil and gas lease on the land and handed the lease to W. L. Rudd with an oral agreement at the time that Rudd would deliver it to Cary Abney, an attorney at law at Marshall, Texas, to be held in escrow for a period of ten days, during which time the lessee should examine the title to the land and, if satisfied, the purchase price of $3.00 per acre was to be paid to the escrow agent and, if not, the lease was to be returned to the lessors. Rudd did not deliver the lease to the escrow agent, but retained it in his possession. The evidence further shows that on the afternoon of the tenth day after May 2, 1944, Bell made inquiry of the escrow agent to ascertain whether Rudd had delivered the oil and gas lease to him as per the agreement, and to see if Rudd had paid the consideration for the oil and gas lease to him. Bell also went to the bank named in the oil and gas lease to find out whether the lease or the money had been left with it. After Bell found that Rudd had neither delivered the oil and gas lease to the escrow agent or the bank nor paid the consideration therefor, on the same date he delivered another oil and gas lease to one Fuller. The trial court, evidently upon the theory that Bell and wife repudiated their agreement by not waiting ten full days before leasing the property to another, rendered judgment in favor of Rudd granting specific performance as well as a cancellation of the lease from the Bells to Fuller. The Honorable Court of Civil Appeals affirmed the judgment of the trial court upon the theory, as in shown by its opinion, that where a grantor deliveres a deed to the grantee named therein with the intention that it pass from his control, and with an oral agree-

ment that under certain contingencies it shall become effective without any further action on his part, such delivery or deposit constitutes an immediate, absolute transfer of title, and in such a case parol evidence is not admissible to show that the delivery was conditional. That this rule is sound and is supported by the authorities cited we have no doubt. Holt v. Gordon, 107 Texas 137, 174 S. W. 1097. But in our opinion the rule is not applicable to the facts pleaded and proved here.

Rudd alleged an agreement whereby the grantors of an oil and gas lease handed the same to the grantee for the purpose of placing it in the possession of an escrow agent, and upon payment of the consideration by the grantee the lease was to be delivered, otherwise it was to be returned to the grantors.

The petitioners alleged substantially the same agreement, except they averred that the lease was to be held by the escrow agent for a period of ten days, within which time the consideration was to be paid or the lease was to be returned to the grantors.

The delivery of the oil and gas lease under the facts and circumstances alleged by the parties was not a delivery of the instrument in escrow to the grantee, but was a mere handing of the instrument to the grantee for the purpose of transmitting the same to the agreed escrow agent. According to the averments of the parties the lease was to be there delivered upon compliance with the conditions of the escrow.

In 16 American Jurisprudence, p. 507, Sec. 124, it is said:

"The rule that where a deed is delivered to the grantee, but upon condition, the delivery is good but the condition is a nullity has no application where the circumstances negative any intention to deliver the deed even conditionally. Thus, where, in giving the grantee possession of a deed, the intention is merely that he examine the deed or transmit it to a third person for a particular purpose, where a deed is given to the grantee for safe keeping or to aid in the transfer of title to another prospective purchaser, there is no legal delivery of the instrument which will pass title to the property."

In 30 C. J. S., p. 1201, Sec. 7, it is said:

"Notwithstanding the general rule heretofore stated, the delivery of the instrument to the grantee or obligee does not operate as an absolute delivery where it is agreed at the time of

such delivery that the grantee is to deposit the instrument as an escrow with a certain third person, * * *."

The case of Ford v. Moody, 169 Ark. 649, 276 S. W. 595, by the Supreme Court of Arkansas, is cited to support the text. In that case it is said:

"Learned counsel for Ford contend that the delivery of the escrow agreement and the instruments accompanying it to Ford was in fact a delivery to him of the oil and gas lease, in asmuch as the oil and gas lease and the assignment of the oil and gas lease on their face contain no conditions; that such being the case, these instruments thus delivered to him vested in Ford, the grantee, a title beyond the power of the grantors to recall or challenge. This contention is unsound, and the argument predicated thereon is bottomed wholly upon a false premise, namely, that the instruments executed by the Moodys and attached to the escrow agreement were delivered to Ford, the grantee.

"It is well settled by authorities, our own among them, that a deed, absolute on its face, cannot be delivered to the grantee in escrow. Campbell v. Jones, 52 Ark. 493, 12 S. W. 1016, 6 L. R. A. 783; Wipfler v. Wipfler, 153 Mich. 18, 116 N. W. 544, 16 L. R. A. (N.S.) 941, and numerous cases cited in note to that case. Counsel for Ford cite and rely upon these authorities, but they have no application whatever to the facts of this record, for the reason that there was no delivery of the instruments to Ford. On the contrary, Ford was simply the intermediary or channel through which the escrow agreement and the instruments executed thereunder and connected therewith were to be delivered to the bank as the escrow agent. As such agent it was to deliver the instruments according to the terms of the escrow agreement and not otherwise. The fallacy of counsel's contention is in assuming that there was a delivery to Ford, the grantee, whereas, the uncontroverted testimony shows that these papers, after their execution by the Moodys, were left by them with Ford; the express understanding being that he was to deposit the same with the bank as the escrow agent, to hold the same for the respective parties to the escrow agreement until the terms thereof were performed by them."

According to the evidence in this record it was not intended by the parties to the oil and gas lease that the same would be delivered so as to become operative to pass title at the time it was deposited with the grantee, but the grantee was a mere messenger or the intermediary through which the oil and gas

lease was to be deposited with the escrow agent and then to be delivered and to become operative as a conveyance only upon compliance with the terms of the escrow agreement.

14 Texas Jurisprudence, p. 824, Sec. 61, after stating the general rule, recognizes the "seeming exception" as follows:

"On the other hand there is no delivery when the grantor merely hands the deed to the grantee for examination or for transmittal to a depositary to hold it in escrow in accordance with specified conditions. In such case the deed is deposited with the grantee or handed to him for a purpose other than to presently convey the property."

This seeming exception to the general rule was stated to be no exception at all in the case of East Texas Fire Insurance Company v. Clarke, 1 Texas Civ. App. 238, 21 S. W. 277, wherein 3 Washburn, Real Property, 584, was quoted as follows:

"For a deed can never be an escrow if delivered to the grantee himself, unless for the express purpose of being handed to another person, even though accompanied with an express condition, and not to take effect unless such condition is complied with."

The court commented:

"The exception stated by Mr. Washburn, 'unless for the express purpose of being handed to another person,' is in fact no exception, for in that instance it is not a delivery, but the grantee is made the mere agent to deliver the deed to another person."

To the same effect, see Manton v. City of San Antonio, 207 S. W. 951.

In Volume 7, p. 609, Thompson on Real Property, the rule is stated:

"The mere handing of a deed to the grantee does not constitute a delivery thereof where the circumstances show no delivery was intended, such as the mere handing to him for inspection, or for the purpose of transmitting it to another to hold in escrow, to await a complete execution or acknowledgment by another party, or to await the determination of the grantee whether he will accept it or not. * * *"

See annotations contained in 56 American Law Reports, 729.

■ An examination of the pleadings, evidence and decree in this case shows that the same was tried under the alternative pleadings of both of the parties, and the relief sought and obtained by Rudd was for specific performance and a cancellation of an instrument. These are equitable remedies. Rudd is in the position of seeking and obtaining specific performance of an agreement which, according to his own evidence, he failed to perform. To be entitled to a specific performance of a contract one must prove a compliance with all of its terms. Allen v. Strode, 62 S. W. (2d) 289. It is elementary that before a grantee or obligee may assert any rights under an escrow contract he must show that he has complied with the conditions of the escrow, or has offered to perform and was prevented without fault of his own. 17 Tex. Jur., p. 97, Sec. 10. Rudd admitted that the lease was not delivered to the escrow agent. He did not offer to pay the consideration within the ten days. Accordingly, the lower courts erred in granting a specific performance and a cancellation of the lease from the Bells to Fuller. It affirmatively appears that the case has been fully developed. In this situation, no useful purpose for a remand of the case appears.

The judgment of the lower courts will be reversed and judgment will be here rendered in favor of J. B. Bell and wife and Fuller, and against Rudd. It is so ordered.

Opinion delivered January 9, 1946.

Rehearing overruled February 6, 1946.