Kelly STAFFORD, Appellant/Cross–Appellee

v.

SOUTHERN VANITY MAGAZINE, INC., Appellee/Cross–Appellant

and

Perry Hollingsworth and Allison Hollingsworth, Appellees.

No. 05–06–00545–CV.

Court of Appeals of Texas, Dallas.

Aug. 14, 2007.

Kurt C. Banowsky, Banowsky & Levine, P.C., Dallas, for appellant.

Kendra Karlock, David R. Weiner, Glast, Phillips & Murray, P.C., Dallas, for appellee.

Before Justices WRIGHT, RICHTER, and SMITH.[1]

1. The Honorable Bea Ann Smith, Justice, Court of Appeals, Third District of Texas at Austin, Retired, sitting by assignment.

2. Appellant also asserted claims for breach of contract and unjust enrichment due to Southern Vanity's failure to reimburse appellant for

## OPINION

Opinion by Justice WRIGHT.

Kelly Stafford sued Southern Vanity Magazine, Inc. (Southern Vanity), Perry Hollingsworth, and Allsion Hollingsworth for breach of contract and fraud based on Southern Vanity's failure to transfer twenty percent of the stock of the corporation to appellant.[2] The jury determined Southern Vanity breached its agreement to convey the stock, but found for appellees on the fraud claim. In two issues, appellant contends the trial court erred by denying her motion for new trial. In two cross-issues, Southern Vanity contends (1) the trial court erred by awarding specific performance to appellant, and (2) consequently, the award of attorney's fees should be reversed. We overrule appellant's issues and Southern Vanity's cross-issues, and affirm the trial court's judgment.

## Background

Southern Vanity was formed in late 2002 by Perry Hollingsworth, Allison Hollingsworth, and Lisa Applewhite to publish a magazine. Allison and Perry both testified that, at all relevant times, Perry owned one hundred percent of the stock of Southern Vanity. Southern Vanity published its first issue in February 2003.

Appellant began working for the magazine in April 2003 as an independent contractor selling advertisements in the magazine in return for a twenty percent commission. Shortly after appellant began working for Southern Vanity, Allison and Applewhite had a business dispute. Allison and Perry removed Southern

certain expenses and breach of contract and tortious interference with contract due to Southern Vanity's failure to assume appellant's apartment lease. These claims are not at issue in this appeal.

Vanity's property from the magazine's offices and considered shutting down the magazine. For a period of several weeks, the magazine was in "limbo" and appellant did no work for Southern Vanity. Allison and Perry ultimately decided to continue with the magazine and asked appellant to return to work. Southern Vanity could not pay appellant a salary, but on June 26, 2003, Allison sent the following e-mail to appellant and Donana Galloway, another independent contractor selling advertisements for Southern Vanity:

> Steve (Southern Vanity att.) is working day and night on legal issues with Lisa Applewhite Brandt, so he will start working on the following documents next week. Of course I have put numerous amounts of time and money into the magazine and wound up with a disgruntled, out of control associate. I never want this to happen again!
>
> I appreciate both of you and all of your hard work getting Southern Vanity back on track. There is much more to do (sales, sales, sales)! I regret salaries and benefits are not an option as of yet, but will be in the future. Because of your help and continued support in building Southern Vanity Magazine, I would like to offer each of you stock and 20% of the company. Perry and I expect our investments back from the company as each of you expect to be reimbursed for your expenses as Southern Vanity profits.

Following this e-mail, appellant continued to work at Southern Vanity, received the title of Principal/Director of Marketing, and took on additional duties. Southern Vanity did not transfer the stock to appellant. In September 2003, appellant left Southern Vanity.[3]

Appellant sued Southern Vanity, Perry, and Allison based on Southern Vanity's failure to transfer the stock. At trial, appellant contended she was entitled to receive the stock as of June 26, 2003. Appellees argued Southern Vanity was not required to transfer the stock until it became profitable and appellant contributed to its success. The jury determined Southern Vanity breached its agreement to convey the stock, but found for appellees on the fraud claim. Appellant moved for specific performance of the contract. Southern Vanity filed an affidavit executed by Allison stating it was impossible for Southern Vanity to convey any stock to appellant because all stock had been issued to Perry.

Appellant then filed a motion for new trial on her fraud cause of action, contending the fact the stock had been issued to Perry was newly discovered evidence that entitled her to a new trial and that the jury's adverse finding on the fraud claim was against the great weight of the evidence. The trial court granted appellant's request for specific performance. Appellant's motion for new trial was overruled by operation of law. Both appellant and Southern Vanity appealed.

### Specific Performance

Because appellant's issues both pertain to the motion for new trial, we begin our analysis with Southern Vanity's cross-issue alleging the trial court erred in awarding specific performance. Southern Vanity maintains we must reverse the trial court's judgment because appellant did not (1) plead for specific performance, (2) offer any evidence on the essential elements of specific performance, or (3) request jury questions on the elements of specific performance. Additionally, Southern Vanity claims specific performance is impossible

---

3. The evidence was disputed over whether appellant was terminated or resigned.

in this case because all of the stock is owned by Perry, making it impossible for Southern Vanity to transfer stock to appellant. We will address each of Southern Vanity's contentions in turn.

■■■ Southern Vanity first contends specific performance is a separate cause of action that appellant failed to plead. After reviewing the pleadings, we disagree. Texas follows a "fair notice" standard for pleading, which tests whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what evidence might be relevant. *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007); *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 309 (Tex. App.-Dallas 2006, no pet.). Under this standard, "[a] petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex.2000). The rule's purpose is to give the opposing party information sufficient to enable him to prepare a defense. *Id.* When, as here, a party fails to specially except, we construe the pleadings liberally in favor of the pleader. *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897; *Emerson Elec. Co.*, 201 S.W.3d at 309.

■■■ Specific performance is an equitable remedy that may be awarded upon a showing of breach of contract. *Kress v. Soules*, 152 Tex. 595, 597, 261 S.W.2d 703, 704 (1953); *Living Christ Church, Inc. v. Jones*, 734 S.W.2d 417, 419 (Tex.App.-Dallas 1987, writ denied). Specific performance is not a separate cause of action, but rather it is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate. *See Scott v. Sebree*, 986 S.W.2d 364, 368 (Tex. App.-Austin 1999, pet. denied). Here, appellant pleaded a cause of action for breach of contract. In the punitive dam-

ages portion of her pleading, appellant asserted she did not have an adequate remedy at law. And, in her prayer for relief, she sought "a 20% ownership share in the corporations, or in the alternative, the value of the 20% share in the corporations." Southern Vanity did not specially except to appellant's pleading. Construing the pleadings liberally in appellant's favor, we conclude they are sufficient to put Southern Vanity on notice that appellant was seeking, among other things, specific performance for Southern Vanity's breach of contract.

■■■ Southern Vanity next contends there is "no evidence that would support an award of specific performance." Specific performance is an equitable remedy committed to the trial court's discretion. *Bell v. Rudd*, 144 Tex. 491, 191 S.W.2d 841, 843 (1946); *Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 79 (Tex. App.-Austin 2003, pet. denied); *Scott*, 986 S.W.2d at 368 (Tex.App.-Austin 1999, pet. denied). A party seeking specific performance must demonstrate that they have performed, or tendered performance, of their obligations under the contract. *Am. Apparel Prods., Inc. v. Brabs, Inc.*, 880 S.W.2d 267, 269 (Tex.App.-Houston [14th Dist.] 1994, no writ). A contract will not be specifically enforced if there is an adequate remedy at law. *Id.* However, specific performance may be awarded when the personal property has a "special, peculiar, or unique value or character." *Madariaga v. Morris*, 639 S.W.2d 709, 711 (Tex.App.-Tyler 1982, writ ref'd n.r.e.). Further, when a closely-held corporation's stock has no ascertainable value, the party may seek specific performance to enforce a stock purchase agreement. *Miga v. Jensen*, 96 S.W.3d 207, 217 (Tex.2002) (citing *Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966) (plaintiff could seek specific performance to enforce stock purchase agreement

where corporation was closely held and stock had no market value)).

With respect to whether appellant complied with the terms of the contract, the record shows that on June 26, 2003, Southern Vanity offered appellant twenty percent of the stock in the corporation if appellant continued to work for Southern Vanity. At trial, appellant maintained she was entitled to receive the stock at the point she agreed to continue, and did continue, to work for the magazine. Although Southern Vanity argued appellant was not entitled to receive the stock until the magazine became profitable, the jury decided the issue adversely to Southern Vanity by finding it failed to comply with the agreement to transfer stock. It is undisputed appellant returned to work at the magazine after receiving the stock offer. Thus, we cannot conclude the trial court abused is discretion by determining appellant demonstrated she performed her obligations under the contract.

■■■■■ As to whether appellant had an adequate remedy at law, the record does not contain evidence the Southern Vanity stock had any ascertainable value. Rather, Southern Vanity lost money from its inception and was still losing money at the time of trial. Allison testified the value of the stock was "zero or worse," and Perry testified he could not sell Southern Vanity due to the amount of debt the company had incurred. Thus, the record shows Southern Vanity's stock had no as-

certainable value, and appellant could seek specific performance to enforce the stock transfer agreement. *See Miga,* 96 S.W.3d at 217; *Bendalin,* 406 S.W.2d at 900.[4]

■■■ We next turn to Southern Vanity's complaint regarding jury questions. Relying on *Lawler v. Digiuseppe,* No. 05–03–00468–CV, 2004 WL 1209569 (Tex.App.-Dallas June 3, 2004, pet. granted) (memo. op. on reh'g), Southern Vanity contends appellant is not entitled to specific performance because she "did not request any jury questions on the essential elements of specific performance." In *Lawler,* the purchasers sued for breach of a contract to sell real estate. The jury found the seller breached the contract and awarded $295,696.93 in damages. However, on the purchasers' motion, the trial court entered final judgment granting specific performance. The seller appealed, arguing the trial court erred in granting specific performance because the purchasers failed to obtain a jury finding that the purchasers were ready, willing, and able to perform the contract. We concluded the issue of whether the purchasers were ready, willing, and able to perform was disputed at trial and, therefore, had to be resolved before equitable relief could be awarded. *Id.* at *1–2.

■■■ When contested fact issues must be resolved before equitable relief can be determined, a party is entitled to have a jury resolve the fact dispute. *Burrow v. Arce,* 997 S.W.2d 229, 245 (Tex.1999);

4. To the extent Southern Vanity suggests specific performance was improper because appellant failed to put on evidence showing she had clean hands, again we disagree. The doctrine of unclean hands operates as a bar to the equitable relief of specific performance. *Lazy M Ranch, Ltd. v. TXI Operations LP,* 978 S.W.2d 678, 683 (Tex.App.-Austin 1998, pet. denied). As the party claiming appellant had unclean hands, it is Southern Vanity's burden to show it was injured by appellant's unlawful

or inequitable conduct. *Willis v. Donnelly,* 118 S.W.3d 10, 38 (Tex.App.-Houston [14th Dist.] 2003), *aff'd in part and rev'd in part on other grounds,* 199 S.W.3d 262, 278–79 (Tex. 2006). Southern Vanity has neither argued nor shown it was harmed by any illegal or inequitable conduct by appellant relating to the stock transfer agreement. Thus, we cannot conclude the award of specific performance was improper on that basis.

*Hudson v. Cooper*, 162 S.W.3d 685, 688 (Tex.App.-Houston [14th Dist.] 2005, no pet.). However, Southern Vanity has not pointed to a disputed issue of fact that should have been submitted to the jury. The jury determined Southern Vanity breached its contract to convey stock to appellant, necessarily finding a contract existed as of June 26, 2003 when Southern Vanity offered stock in exchange for appellant continuing to work at the magazine. It is undisputed appellant continued to work at the magazine after June 26, 2003 and, therefore, performed under the contract. Thus, appellant was not required to obtain a jury finding on whether she was ready, willing, and able to perform under the contract. *Chilton Ins. Co. v. Pate & Pate Enters.*, 930 S.W.2d 877, 886 (Tex. App.-San Antonio 1996, writ denied) (no jury question necessary if evidence conclusively proves fact). As to whether appellant had unclean hands or an adequate remedy at law, these questions "present legal policy issues well beyond the jury's province of judging credibility and resolving factual disputes." *Burrow*, 997 S.W.2d at 245 (adequacy of other remedies); *Hudson*, 162 S.W.3d at 688 (equitable considerations such as whether plaintiff had unclean hands and whether, and how much, equitable relief should be awarded must be determined by trial court rather than jury). Accordingly, there were no additional disputed issues of fact in support of appellant's claim for specific performance that needed to be submitted to the jury.

Again relying on *Lawler*, Southern Vanity next argues the submission of the breach of contract question was not necessarily referable to appellant's claim for specific performance and did not put it on notice appellant was seeking specific performance. In *Lawler*, we concluded jury questions asking whether the seller or one of the purchasers breached the contract, standing alone, were not necessarily refer-able to a claim for specific performance. *Lawler*, 2004 WL 1209569, at *2. Therefore, the questions did not put the seller on notice the purchasers were seeking specific performance so the seller could object to the omission of a jury question on whether the purchasers were ready, willing, and able to perform the contract. *Id.*

However, in this case, we have concluded appellant pleaded for specific performance. Appellant's counsel also raised the issue of specific performance in argument before the trial court. And, the trial court did not submit a damages question relating to Southern Vanity's breach of contract, putting Southern Vanity on notice damages were not an available remedy. Finally, there were no additional issues of fact that needed to be submitted to the jury in this case. Accordingly, unlike *Lawler*, Southern Vanity not only was on notice appellant was seeking specific performance, but there was no basis for Southern Vanity to object to the omission of any issue.

■ Southern Vanity's final complaint regarding the award of specific performance is that specific performance of the contract by Southern Vanity is impossible. Specifically, Southern Vanity maintains that because it has issued one hundred percent of its stock to Perry, it is impossible for it to transfer any stock to appellant. Impossibility of performance is not available as a defense to a party which by its voluntary act created the impossibility. *Solomon v. Greenblatt*, 812 S.W.2d 7, 18 (Tex.App.-Dallas 1991, no writ) (citing *Martin v. Star Publishing Co.*, 126 A.2d 238, 242 (Del.1956) and 6 S. WILLISTON: A TREATISE ON THE LAW OF CONTRACTS § 1960). Here, the transfer of stock from Southern Vanity to Perry is a situation voluntarily created by Southern Vanity and Perry. Thus, Southern Vanity may not rely on

impossibility of performance as a defense in this case. *See Solomon*, 812 S.W.2d at 18.

Having determined appellant's pleadings were adequate to put Southern Vanity on notice of her request for specific performance, the evidence is legally sufficient to support the trial court's award of specific performance, no additional jury questions were necessary in this case, and that the defense of impossibility is not available in this case, we conclude the trial court did not abuse its discretion in awarding appellant specific performance. Therefore, we overrule Southern Vanity's first cross-issue. Due to our disposition of Southern Vanity's first cross-issue, we need not address its second cross-issue challenging the award of attorney's fees and costs.

### Motion for New Trial

■■■ We now turn to appellant's two issues contending the trial court erred in denying her motion for new trial on her fraud claim. According to appellant, the trial court should have granted her motion because (1) Allison's affidavit filed after trial asserting Southern Vanity has no stock to transfer to appellant is newly discovered evidence that entitled appellant to a new trial, and (2) the jury's finding is against the great weight of the evidence. We review the trial court's denial of a motion for new trial for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex.2006) (per curiam); *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 368 (Tex.App.-Dallas 2005, no pet.). The trial

court abuses its discretion only if it acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *El Dorado Motors, Inc.*, 168 S.W.3d at 368.

■■■ In her first issue, appellant contends the trial court erred by denying her motion for new trial on the fraud issues because Allison's affidavit asserting Southern Vanity has no stock to transfer to appellant is newly discovered evidence that entitled her to a new trial. A party who seeks a new trial on the ground of newly discovered evidence must show the trial court (1) the evidence came to her knowledge after trial; (2) it was not owing to the want of due diligence that it did not come sooner; (3) it is not cumulative; and (4) it is so material that it would probably produce a difference result if a new trial were granted. *Johnson v. Legacy Bank of Texas*, 167 S.W.3d 643, 645–46 (Tex.App.-Dallas 2005, no pet.). Appellant contends the newly discovered evidence is that Southern Vanity has issued all its stock to Perry, making it impossible for Southern Vanity to transfer any stock to appellant. Regardless of when the stock was issued to Perry, it was undisputed at trial that Perry owned one hundred percent of the stock of Southern Vanity at all relevant times.[5] Thus, any stock transferred to appellant would necessarily come from Perry. Appellant has failed to show the fact Southern Vanity issued the stock to Perry is newly discovered evidence. We overrule appellant's first issue.

---

**5.** As noted, it was undisputed at trial that Perry owned one hundred percent of the stock in Southern Vanity. Indeed, Southern Vanity's counsel represented to the trial court that:

> Southern Vanity had no stock to give. Perry Hollingsworth owned a hundred percent of the stock. If some of that stock was going to go somewhere, it was going to

come from [Perry].... [T]hey weren't going to issue new stock. [Perry] owned the stock and he was going to transfer it to her pursuant to this agreement.... Southern Vanity had no stock to give. It had been-it was all held by [Perry].

Neither appellant nor Southern Vanity have cited to any authority that the actual issuance of stock to Perry affected this agreement.

In her second issue, appellant contends the trial court erred by overruling her motion for new trial because the jury's finding that appellees did not commit fraud is against the great weight of the evidence. When a party attacks the factual sufficiency of an adverse finding on which she had the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001) (per curiam). When reviewing a finding for factual sufficiency, we consider all of the evidence and will set aside a finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

Appellant argues the evidence is factually insufficient to support the jury's finding because the "evidence at trial, when considered in conjunction with the evidence discovered post-trial, establishes that [appellees] committed fraud by promising stock they did not intend to transfer" to appellant. However, the evidence supports the parties' different interpretations of when the stock was to be transferred to appellant. Both Perry and Allison testified they believed Southern Vanity was not obligated to transfer stock to appellant until Southern Vanity became profitable. Perry testified he agreed to the offer of stock to appellant and "when the company became profitable and we was [sic] paid back our investment for the money I had put into the company, then they would receive their shares equal at 20 percent a piece." Allison testified Perry was willing to release the stock after Southern Vanity became profitable. But, appellant testified she believed she was entitled to the stock without the profitability condition, and the jury agreed with her. There was no evidence Perry or Southern Vanity did not intend to transfer the stock when Southern

Vanity entered into the stock transfer agreement. Thus, we cannot conclude the jury's finding appellees did not commit fraud in making the stock offer to appellant is against the great weight and preponderance of the evidence. Consequently, we cannot conclude the trial court abused its discretion by denying appellant's motion for new trial on that basis. We overrule appellant's second issue.

Accordingly, we affirm the trial court's judgment.