COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

                                        NO.
2-07-443-CV

 

PACIWEST, INC.                                                          APPELLANT
AND

                                                                                CROSS-APPELLEE

 

                                                   V.

 

WARNER ALAN PROPERTIES, LLC                                   APPELLEES
AND

AND
WARNER ALAN/WESTCLIFF, LTD.                     
CROSS-APPELLANTS

 

 

                                              ------------

 

            FROM THE 96TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                            Introduction








This case involves competing motions for summary
judgment in a suit over a failed real estate transaction.  The trial court granted summary judgment for
the purchaser, appellee Warner Alan/Westcliff, Ltd. (Westcliff), and appellee
Warner Alan Properties, LLC (Warner Alan), Westcliff=s
predecessor-in-interest in the purchase and sale contract.  It also ordered that Westcliff was entitled
to specific performance of the contract as a remedy for the seller=s
default.  The seller, appellant Paciwest,
Inc., brings three issues on appeal in which it contends that the trial court
erred by sustaining appellees=
objections to Paciwest=s summary judgment proof, by
denying Paciwest=s motion for summary judgment
and granting appellees=, and by granting appellees= request
for specific performance.  In a single
issue in a cross-appeal, appellees contend that the trial court erred by
determining that they were precluded from recovering damages in addition to
specific performance because of the election of remedies doctrine.  We affirm in part and reverse and remand in
part.

                                        Background
Facts

On July 28, 2005, Paciwest and Warner Alan
entered into a Purchase Agreement under which Paciwest would sell Warner Alan
its interest in the Westcliff Manor Apartments in Fort Worth, Texas.  The agreement provided that the purchase
price for the property would be $5,780,000, payable as follows:

(a)     a portion of the Purchase
Price shall be paid by [Warner Alan=s] assuming (subject to any limitations on
personal liability applicable thereto) the outstanding principal balance owing
on the Closing Date (hereinafter defined) on that certain Promissory Note (the ANote@) dated October 10, 2002,
in the original principal amount of $4,000,000, executed by [Paciwest] . . . .

 

(b)    The balance of the
Purchase Price shall be payable at the Closing (hereinafter defined) in
immediately available funds.








AClosing@ was
defined as A9:00 a.m. on the date fifteen
(15) days after written approval of [Warner Alan=s]
assumption of the Note by [the] Lender.@  The contract also provided that closing could
be extended if the lender had not timely sent the title company the signed
documents required to evidence the lender=s
approval of the loan assumption.

Shortly after the parties executed the contract,
Ted Broadfoot and Chris Neill of Warner Alan began discussing with Dziem AJim@ Nguyen
of Paciwest the possibility that Warner Alan would seek third party financing
rather than assume Paciwest=s
note.  On August 6, 2005, Nguyen sent
Warner Alan a letter to Neill=s
attention in which he stated the following:

I am writing you this letter just want to recap my conversation with
you and Ted regarding financing of the sale:

 

1)     You will run the number[s]
and look into the alternative of paying off the existing note including
defeasance or yield maintenance by financing with another third party; and
you will decide which way this coming week and will send in the 2 assumption
fees check of $3,000 each to [the lender] then if assumption is still the
choice.

 

2)     To accommodate that, I
will prepare the assumption paper to send to [the lender] but will not send in
until Wednesday or next Thursday morning. . . .

 

. . . .








4)     If you choose to assume
the note, Parking [repairs] will have to be done prior to the assumption=s approval.  Then, let me know to what extent you want
that done and we will need an addendum to do the repair and increase the
contract price.   [Emphasis added.]

 

On August 17, 2005, Neill faxed Nguyen a letter stating, APlease
allow this to serve as notice that we will not be assuming the current . . .
loan which is in place for Westcliff Manor. 
We will be placing new debt on this property through La Jolla Bank.@  Subsequently, on August 30, 2005, Nguyen sent
a letter to Paciwest=s lender, stating, APlease
accept this letter as our intent to pay off Loan XX-XXXXXXX within thirty (30)
days (by September 30, 2005).  At this
time we are requesting payoff information be faxed to (972) 613-[illegible.].@ 








Nguyen faxed Broadfoot a proposed First Amendment
to the contract on August 31, 2005.  The
amendment included the following terms: 
(1) Warner Alan would pay, in addition to the purchase price, Aall the
fees in connection with paying off the existing note early, including but not
limited to the pre-payment yield maintenance,@ (2)
Warner Alan=s inspection period would end at
5 p.m. on September 7, 2005, and (3) closing would take place on or before
September 30, 2005, with the option to extend for an additional fifteen days
upon Warner Alan=s depositing an additional,
nonrefundable earnest money of $10,000. 
It also included a representation that neither party had defaulted under
the contract up to that time and a statement that A[a]ll of
[Paciwest=s] warranty and indemnification
to [Warner Alan] in the [a]greement with respect to the existing Loan documents
now becomes null and void.@

The next correspondence between the parties
occurred on September 5, 2005, when Neill faxed a letter to Nguyen asking for a
price reduction of $300,000.  In the
letter, Neill stated that Athe
appraiser has indicated that the value is much lower than expected and there is
a lot of deferred maintenance outside of our original rehab scope.@  Additionally, he noted that A[t]he
occupancy on the property has declined as has the economic collection@ and that
the Asizeable
drop in collections is greatly impacting the value of the property.@  Neill goes on to state that

[a]ll of these items are
causing our lender to lower the amount they are willing to finance[.]  While I fully admit that the property is a
nice property in a good area[,] I also have to realistically point out that on
paper the property is worth significantly less than 5[.]8 million and is in
fact worth 2.8 million at an 8 percent capitalization rate[.]  We are willing to purchase a sizeable portion
of the upside, but simply cannot put 2[.]5 million in cash in this deal[.]  The unfortunate reality is that we are at a
point where we can move forward and try to increase funding but the chances of
that are slim[.]  We want to do the deal
but are at the 23rd hour and are running out of options and need some help from
you. 

 

Nguyen was angry when he received this letter and decided not to go
forward with the transaction under any terms other than those in the original
contract; in other words, Paciwest would perform its obligations under the
contract only if Warner Alan was still able to assume Paciwest=s note.








The next day, September 6, 2005, Broadfoot faxed
Nguyen a letter with changes to the proposed First Amendment.  In the cover letter, he noted that the lender
had 

indicated that part of
prepaying the notes is paying the accrued interest expense which is a full
month regardless of prepay date.  We do
not want to double pay interest and therefore would not want to close anytime
other than month end.  Currently, our
lender believes they will be ready for September 30th, but in case they are
not, we would want to extend for 30 days instead of 15.

 

The only changes marked on the amendment are the addition Ato the
best of their knowledge@ to the end of the provision in
which each party was to acknowledge that there had been no breach or default of
the contract, the deletion of the provision that Paciwest=s
representations and warranties in the agreement about the existing loan
documents are null and void, and the change from fifteen to thirty days on the
extension date.  According to Neill,
Warner Alan did not think an amendment to the contract was necessary, but they Awere
trying to be accommodating.@  








Nguyen sent another letter on September 9, 2005,
in which he stated that Paciwest could not approve either the price reduction
requested by Warner Alan, nor the requested modifications to the
amendment.  Thus, Nguyen said, Athe
contract stands unchanged, as written.@  On September 20, 2005, Warner Alan=s
attorneys sent a letter to Paciwest by fax and certified mail indicating that
Warner Alan was Aready, willing and able to close
this transaction on September 30, 2005@ and
that Westcliff,[1]


the affiliate of [Warner
Alan] to which the Contract will be assigned, will be present at the September
30 closing and will tender full performance of all its obligations under the
Contract, including but not limited to full payment of the Purchase Price.  The Note will be fully discharged out of the
sale proceeds and any prepayment penalty will be paid by the purchaser.  Therefore the net amount received by
[Paciwest] will be the same as the net amount it would have received had the
Note been assumed.

 

On September 28, 2005, Paciwest=s
attorney sent Warner Alan a letter indicating that the contract had
automatically terminated by its own terms as of September 26, 2005 because
Warner Alan had failed to obtain lender approval to assume Paciwest=s
loan.  Neill and Broadfoot both attended
the scheduled closing.  Warner Alan wired
$5,621,031.91 to the title company, representing the purchase price, less the
initial escrow deposit of $35,000, rent and tax prorations, and a credit for
security deposits held by Paciwest. 
Warner Alan also wired an additional $250,000 and had additional funds
available if more money was needed. 
However, Paciwest did not attend and refused to close the transaction.








Appellees sued Paciwest on October 3, 2005,
seeking specific performance of the contract and a declaratory judgment that
(1) the contract did not terminate on September 26, 2005 or at any other time,
(2) appellees are not in breach of the contract, (3) Westcliff can fulfill its
obligations under the contract in an all-cash transaction as opposed to
assuming the loan, (4) Paciwest breached and repudiated the contract by
refusing to close and treating the contract as terminated, and (5) the
September 30 closing date was in compliance with the contract terms.  They also sought attorneys=
fees.  Paciwest timely filed an
answer.  Appellees amended their petition
in March, October, and November 2006 to include claims for damages
for (1) Athe difference in interest rates
and interest payments caused by [Paciwest=s]
failure to transfer the [p]roperty on September 30, 2005,@ (2)
lost profits, management fees, and fair rental value of the property since
September 30, 2005, and (3) damages for increases in the cost of repair and
improvement projects and the financing of such projects.  They also included an alternative prayer for
relief for damages only.








Appellees filed a traditional motion for partial
summary judgment on the liability and specific performance issues, reserving
the damages issues for trial.  Paciwest
responded and also filed a competing traditional motion for summary judgment
that would dispose of all of appellees=
claims.  The trial court granted
appellees= motion, denied Paciwest=s, and
ordered the following:

[It is] ORDERED, ADJUDGED, DECREED AND DECLARED that Warner Alan
Properties, LLC has the right to pay a portion of the purchase price by paying
off Paciwest=s loan instead of
assuming it; and it is further

 

ORDERED, ADJUDGED, DECREED AND DECLARED that [Paciwest] breached the
contract by failing to convey the Westcliff Manor
Apartments . . . on September 30, 2005; and it is further

 

ORDERED, ADJUDGED, DECREED AND DECLARED that the Court GRANTS Warner
Alan/Westcliff, Ltd. specific performance and ORDERS [Paciwest] to perform the
contract and convey the Westcliff Manor Apartments . . . to Warner
Alan/Westcliff, Ltd.; and it is further

 

ORDERED, ADJUDGED, DECREED AND DECLARED that the only remaining issues
to be determined at trial are the amount of [appellees=] damages caused by
Paciwest=s failure to convey the Westcliff
Manor Apartments on September 30, 2005, and the amount of [appellees=] reasonable and
necessary attorneys= fees and expenses.

 

Thus, after the trial court granted appellees= motion,
the only issues remaining for trial were whether appellees were entitled to
damages as well as specific performance of the contract.








Paciwest subsequently objected to appellees= damages
expert and additionally argued that the contract did not provide for the remedy
of damages as well as specific performance but rather that the two are mutually
exclusive remedies under the contract. 
The trial court agreed, leaving attorneys= fees as
the only issue to be decided.  The
parties then entered into a stipulation on attorneys= fees.

The trial court entered a final judgment
incorporating all of its rulings and the parties=
stipulation on attorneys= fees on September 28,
2007.  Appellees filed a notice of appeal
on December 13, 2007, and Paciwest filed a notice of appeal on December 21,
2007.  The parties later filed an agreed
motion to realign the parties, which this court granted, making Paciwest the
appellant and cross-appellee and Warner Alan and Westcliff appellees and cross-appellants.

                                         Issues
Presented

In three issues, Paciwest contends that the trial
court erred by sustaining appellees=
objections to its summary judgment proof, by granting appellees= motion
for partial summary judgment and denying Paciwest=s motion
for summary judgment, and by granting appellees= request
for specific performance.  In their
cross-appeal, appellees contend that the trial court erred by refusing to allow
them to recover incidental damages to compensate for Paciwest=s delay
in conveying the property.

                       Objections
to Summary Judgment Evidence








Appellees objected to several statements in
Nguyen=s
affidavit offered by Paciwest as summary judgment evidence; the trial court
sustained some but not all of these objections. 
Specifically, Paciwest complains about the trial court=s
sustaining appellees= objections to the following
statements:  AThere
was never an agreement reached between the parties concerning an amendment to
the Contract,@ and AIt was
Paciwest=s
understanding, which was in accordance with the express terms of the contract,
that if an amendment or modification was not agreed to in writing that the
amendment or modification was not finalized, nor enforceable.@








We review a trial court=s ruling
sustaining or overruling objections to summary judgment evidence for an abuse
of discretion.  Garner v. Fidelity
Bank, N.A., 244 S.W.3d 855, 859 (Tex. App.CDallas
2008, no pet.); Bd. of Trustees of Fire and Police Retiree Health Fund v.
Towers, Perrin, Forster & Crosby, Inc., 191 S.W.3d 185, 192B93 (Tex.
App.CSan
Antonio 2005, pet. denied); see Reynolds v. Murphy, 188 S.W.3d 252, 259B61 (Tex.
App.CFort
Worth 2006, pet. denied), cert. denied, 127 S. Ct. 1839 (2007).  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986).  Merely
because a trial court may decide a matter within its discretion in a different
manner than an appellate court would in a similar circumstance does not
demonstrate that an abuse of discretion has occurred.  Id.

Appellees objected to Nguyen=s
statement that the parties never agreed on an amendment to the contract as
being a Alegal
conclusion.@ 
The trial court agreed.  Paciwest
contends that the trial court abused its discretion by sustaining this
objection because it did not sustain its similar objection to a statement in
Broadfoot=s affidavit that A[i]n a
subsequent conversation, Mr. Nguyen and I agreed that the closing would take
place on September 30, 2005,@ or a
statement by Neill in his affidavit that AWarner
Alan and Paciwest orally agreed that Warner Alan could pay-off Paciwest=s Note
instead of assuming it.@ 
According to Paciwest, appellees opened the door to Nguyen=s
statement by introducing similar testimony by Neill and Broadfoot. Also, they
contend that by sustaining appellees=
objection but denying Paciwest=s, the
trial court prevented Paciwest from presenting conflicting evidence on the
matter.








We conclude and hold that the trial court did not
abuse its discretion by sustaining appellees=
objection to Nguyen=s statement as a legal
conclusion.  Neither Neill=s nor
Broadfoot=s statements attempt to broadly
conclude that an amendment to the contract was or was not reached; they simply
address the underlying facts of what terms were specifically agreed upon.  In contrast, Nguyen=s
statement opines that no legally binding amendment was reached.  This is more in the nature of a legal
conclusion than a statement of fact.  See
Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984); Souder v. Cannon,
235 S.W.3d 841, 849 (Tex. App.CFort
Worth 2007, no pet.).

Moreover, we also conclude and hold that the
trial court did not abuse its discretion by sustaining appellees=
objection to Nguyen=s statement that Paciwest=s
understanding was that if an amendment or modification was not in writing, it
was not enforceable, and that Paciwest=s
understanding was in accordance with the terms of the contract.  To begin with, the part of the statement
indicating that Paciwest=s understanding is in accordance
with the contract terms is an impermissible legal conclusion.  See Brownlee, 665 S.W.2d at 112; Souder,
235 S.W.3d at 849.  Moreover, as Paciwest
pointed out in its objection to the evidence, Paciwest=s
subjective intent is irrelevant to the issue of whether the parties agreed to
change the contract terms.  A
determination of whether a meeting of the minds has occurred is based on an
objective standard; thus, evidence of Nguyen=s
subjective belief about what the contract says or about whether an amendment
occurred is not relevant to whether there was a meeting of the minds sufficient
to amend the contract.  See Cox v. S.
Garrett, L.L.C., 245 S.W.3d 574, 579 (Tex. App.CHouston
[1st Dist.] 2007, no pet.); Copeland v. Alsobrook, 3 S.W.3d 598, 604
(Tex. App.CSan Antonio 1999, pet. denied).








We overrule Paciwest=s third
issue.

                       Competing
Motions for Summary Judgment

In its first issue, Paciwest challenges the
summary judgment for appellees, contending that Westcliff is not entitled to
specific performance because (1) the statute of frauds and section 9.4 of the
contract prohibit enforcement of the contract under the terms proposed by
appellee, (2) the trial court disregarded the contract=s
automatic termination provision and imposed additional obligations on the
parties that were not included in the original contract, (3) Warner Alan did
not have the unilateral right to change the contract=s
payment method from assumption to an all-cash transaction, (4) compliance
with the contract by Warner Alan was still possible once it received
notification from Paciwest that the contract would not be amended as requested,
(5) specific performance is unavailable to Warner Alan because it has unclean
hands, (6) specific performance is unavailable to Warner Alan because it did
not establish that it properly tendered performance, and (7) the original
contract is neither valid nor enforceable because it is not supported by
consideration and lacks mutuality of obligation.

1.     Standard of Review








When both parties move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court
should review both parties= summary
judgment evidence and determine all questions presented.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  The
reviewing court should render the judgment that the trial court should have
rendered.  Id.

A plaintiff is entitled to summary judgment on a
cause of action if it conclusively proves all essential elements of the
claim.  See Tex. R. Civ. P.  166a(a), (c); MMP, Ltd. v. Jones, 710
S.W.2d 59, 60 (Tex. 1986).  A defendant
who conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim. 
IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143
S.W.3d 794, 798 (Tex. 2004); see Tex. R. Civ. P. 166a(b), (c).

When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.  Mason, 143 S.W.3d at 798.  Questions of law are appropriate matters for
summary judgment.  Rhone‑Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Westchester Fire Ins.
Co. v. Admiral Ins. Co., 152 S.W.3d 172, 178 (Tex. App.CFort
Worth 2004, pet. denied) (op. on reh=g).








2.     Analysis

a.      Appellees=
Evidence of Amendment to Contract

Paciwest=s first
four arguments rest on the assumption that there is no evidence showing the
parties amended the contract to allow appellees to obtain third party financing
instead of assuming Paciwest=s loan.

The statute of frauds requires a real estate
contract to be in writing and signed by the person against whom it is to be
charged.  Tex. Bus. & Com. Code Ann. '
26.01(a), (b)(4) (Vernon Supp. 2008); Chambers v. Pruitt, 241 S.W.3d
679, 687 (Tex. App.CDallas 2007, no pet.).  Section 9.4 of the contract provides that 

[n]either this Agreement
nor any provision hereof may be waived, modified, amended, discharged or
terminated except by an instrument in writing signed by the party against which
the enforcement of such waiver, modification, amendment, discharge or
termination is sought, and then only to the extent set forth in such
instrument.

 








The plain language of Nguyen=s August
6, 2005 letter, which was signed by Nguyen and on Paciwest letterhead,
indicates that Warner Alan could choose either to assume the loan or obtain
third party financing (with payoff of defeasance or yield maintenance, in other
words, any prepayment penalty);[2]
Nguyen instructed that Warner Alan should pay the assumption fees if assumption
was its choice.  It is undisputed that
Warner Alan did not pay the assumption fees. 
Thus, Nguyen=s letter is an offer to Warner
Alan to choose which option it wants.  See
KW Constr. v. Stephens & Sons Concrete Contractors, Inc., 165 S.W.3d
874, 883 (Tex. App.CTexarkana 2005, pet. denied) (ATo prove
a valid offer, a party must show (1) the offeror intended to make an offer; (2)
the terms of the offer were clear and definite; and (3) the offeror
communicated the essential terms of the offer to the offeree.@).








Warner Alan accepted that offer not only by
failing to send in the assumption fees but also by sending a written letter to
Paciwest on August 17, 2005 indicating that it would seek third party financing
and it would not assume Paciwest=s loan.[3]  Thus, the parties agreed in writing that
Warner Alan would no longer be obligated to assume Paciwest=s
existing note.  Once the parties agreed
to change the financing terms, Paciwest could not unilaterally change them back
to the terms in the original contract without evidence that Warner Alan
subsequently agreed that the original terms of the contract would be
effective.  There is no such evidence in
the summary judgment record.

In addition, Warner Alan=s
letters referencing a September 30 closing, along with Nguyen=s August
30 letter to Paciwest=s lender, show an agreement by
the parties to close no later than September 30.  See EP Operating Co. v. MJC Energy Co.,
883 S.W.2d 263, 266 (Tex. App.CCorpus
Christi 1994, writ denied).  Moreover, a
September 30 closingCtwo months after the effective
date of the contract that originally called for lender approval of a loan
assumptionCwould not have been unreasonable
and, thus, could be implied.  See O=Farrill
Avila v. Gonzalez, 974 S.W.2d 237, 244 (Tex. App.CSan
Antonio 1998, pet. denied).








Further, even if the writings between the parties
are not sufficient to show an agreement by Paciwest to an all-cash transaction,
provisions in an earnest money contract that provide for termination of a
contract if the buyer is unable to obtain financing are solely for the benefit
of the buyer and may be waived by the buyer. 
See R. Conrad Moore & Assocs., Inc. v. Lerma, 946 S.W.2d 90,
94B95 (Tex.
App.CEl Paso
1997, writ denied); Renouf v. Martini, 577 S.W.2d 803, 803B04 (Tex.
Civ. App.CHouston [14th Dist.] 1979, no
writ).  Thus, even a buyer who has not
strictly complied with the financing terms in an earnest money contract, but
who is nevertheless able to meet its obligations to close a transaction, may
enforce specific performance against a seller who thereafter refuses to close
the transaction on the ground that the buyer did not obtain the financing on
the express terms provided for in the contract. 
See Advance Components, Inc. v. Goodstein, 608 S.W.2d 737, 739B40 (Tex.
Civ. App.CDallas 1980, writ ref=d
n.r.e); cf. Potcinske v. McDonald Prop. Invs., 245 S.W.3d 526,
530B31 (Tex.
App.CHouston
[1st Dist.] 2007, no pet.) (distinguishing Advance Components and
holding that analysis of materiality of financing provisions for purposes of
contract enforcement differs from analysis for purposes of contract formation).








Here, a reading of the entire contract shows that
the financing provision, although negotiated, was for Warner Alan=s
benefit and Warner Alan waived its rights involving assumption of Paciwest=s
loan.  The August 17, 2005 letter
indicating that Warner Alan chose to pay off the loan rather than assume it,
the September 6, 2005 letter enclosing changes to the proposed amendment and
indicating that Warner Alan wanted the option to extend for thirty days to
minimize interest payments, and the September 20, 2005 letter indicating that
Warner Alan was ready to pay the purchase price and any prepayment penalty at
closing all indicate Warner Alan=s
intention to waive the benefit of the assumption financing provisions, including
the automatic termination provision.








Paciwest claims that the financing provisions in
the contract could not be to appellees= benefit
only because other provisions of the contract were dependent upon them and
because an all-cash transaction would work a detriment to Paciwest in that it
would not receive its tax and insurance reserves from the lender until up to
seven days after closing, rather than at closing from the purchaser, as was
contemplated between the parties in the contract.  However, there is no evidence that the other
provisions in the contract, such as the closing date, were tied to assumption
for any particular reason other than to facilitate the closing date as quickly
as possible, which purpose was not thwarted by the all-cash transaction.  Additionally, Paciwest offered no evidence
that a seven-day delay in receiving its escrow from the lender would have any
material or detrimental effect on Paciwest. 
Accordingly, we conclude and hold that either (a) sufficient writings
indicated an agreement to an all-cash transaction closing on or before
September 30 or (b) Warner Alan was entitled to waive the benefit of the
financing provisions to its benefit and proceed with an all-cash transaction.

b.     Whether Westcliff Is Entitled to Specific
Performance

Paciwest contends that Westcliff
is not entitled to specific performance because Warner Alan=s
wrongful conduct in sending the price reduction letter is what caused the
failure of the transaction and because Westcliff failed to tender performance,
which Paciwest claims is a prerequisite to specific performance in this case,
because Westcliff did not tender the correct purchase price at closing.

A contract is subject to specific performance if
it contains the essential terms of a contract, expressed with such certainty
and clarity that it may be understood without recourse to parol evidence.  Johnson v. Snell, 504 S.W.2d 397, 398
(Tex. 1973); Rus‑Ann Dev., Inc. v. ECGC, Inc., 222 S.W.3d 921, 927B28 (Tex.
App.CTyler
2007, no pet.) (holding that lack of closing date in option contract did not
preclude enforcement by specific performance). 
We have already determined that the summary judgment record shows that
the original written contract was validly amended, in writing, to provide that
Warner Alan could pay the purchase price via third party financing, rather than
assumption of Paciwest=s loan and that the parties
would close within a reasonable time, no later than September 30, 2005.








Specific performance is an equitable remedy that
may be awarded at the trial court=s
discretion upon a showing of breach of contract.  Kress v. Soules, 152 Tex. 595, 261
S.W.2d 703, 704 (1953); Bell v. Rudd, 144 Tex. 491, 191 S.W.2d 841, 843
(1946); Stafford v. S. Vanity Magazine, Inc., 231 S.W.3d 530, 535 (Tex.
App.CDallas
2007, pet. denied).  Specific performance
is not a separate cause of action, but rather it is an equitable remedy used as
a substitute for monetary damages when such damages would not be adequate.  Stafford, 231 S.W.3d at 535; Scott
v. Sebree, 986 S.W.2d 364, 368 (Tex. App.CAustin
1999, pet. denied).

i.      Unclean
Hands

The doctrine of unclean hands operates as a bar
to the equitable relief of specific performance.  Stafford, 231 S.W.3d at 536 n.4; Lazy
M Ranch, Ltd. v. TXI Operations LP, 978 S.W.2d 678, 683 (Tex. App.CAustin
1998, pet. denied).  The party claiming
unclean hands has the burden to show that it was injured by the other party=s
unlawful or inequitable conduct.  Stafford,
231 S.W.3d at 536 n.4; Willis v. Donnelly, 118 S.W.3d 10, 38 (Tex. App.CHouston
[14th Dist.] 2003), aff=d in
part and rev=d in part on other grounds, 199
S.W.3d 262, 278B79 (Tex. 2006).








The evidence is disputed as to whether the price
reduction letter contains intentional falsehoods; however, even if it does,
Westcliff is not barred from obtaining specific performance.  The clean hands doctrine should not be
applied unless the party asserting the doctrine has been seriously harmed and
the wrong complained of cannot be corrected without the application of the
doctrine.  Dunnagan v. Watson, 204
S.W.3d 30, 41 (Tex. App.CFort Worth 2006, pet.
denied).  Here, the evidence shows that
any harm suffered by Paciwest was its own doing; it had no obligation to lower
the purchase price and it rejected Warner Alan=s
attempt to do so.  Ultimately, by failing
to terminate during the inspection period, Warner Alan obligated itself and
Westcliff to the purchase price as set forth in the contract.  However, by insisting that the contract had
not been validly amended to allow Warner Alan to purchase the property through
third party financing rather than assumption and by refusing to close unless
the loan was assumed rather than paid off, Paciwest was responsible for its own
default under the contract.  Accordingly,
we conclude and hold that the trial court did not abuse its discretion in
determining that Westcliff was not barred from seeking specific performance by
the Aunclean
hands@
doctrine.  See Stafford, 231
S.W.3d at 536 n.4; Dunnagan, 204 S.W.3d at 41.








ii.      Tender of Performance








Before a grantor or obligee may
assert any rights under an escrow contract, it must show compliance with the
conditions of the escrowCactual performanceCor an
offer to perform that was prevented through no fault of the grantor or
obligee.  Bell, 191 S.W.2d at 844;
Roundville Partners, L.L.C. v. Jones, 118 S.W.3d 73, 79 (Tex. App.CAustin
2003, pet. denied).  In cases in which
the seller=s and buyer=s
contract obligations are mutual and dependent, in that a deed is required to be
delivered upon tender of the purchase price, the purpose of a tender satisfies
two purposes:  first, it invokes the
seller=s
obligation to convey and places him in default if he fails to do so; second, it
satisfies the fundamental prerequisite of specific performanceCthat the
buyer show that he has done or offered to do, or is then ready and willing to
do, all the essential and material acts which the contract requires of
him.  Krayem v. USRP (PAC), L.P.,
194 S.W.3d 91, 94 (Tex. App.CDallas
2006, pet. denied); Roundville, 118 S.W.3d at 79.  An actual tender in strict compliance with
the provisions of the contract, within the time allowed by the contract, is
always required when a contract provides that time is of the essence unless it
is shown that the defaulting party (1) prevented actual tender by the party
attempting to perform or (2) when, as here, the defendant has repudiated the
contract before the time for performance. 
Krayem, 194 S.W.3d at 94; Roundville, 118 S.W.3d at 79B81.[4]  Upon either showing, a party seeking specific
performance must only plead and prove that it is ready, willing, and able to
perform its part of the contract according to its terms.  Rus-Ann Dev., Inc., 222 S.W.3d at 927;
17090 Parkway, Ltd. v. McDavid, 80 S.W.3d 252, 258 (Tex. App.CDallas
2002, pet. denied).








Here, the summary judgment evidence shows that
regardless of whether appellees actually tendered performance in strict
compliance with the contract terms, such tender is excused because Paciwest
clearly repudiated the contract by not only insisting that appellees continue
the assumption process but also by sending the September 28, 2005 letter indicating
that the contract was terminated.[5]  See Jenkins v. Jenkins, 991 S.W.2d
440, 447 (Tex. App.CFort Worth 1999, pet. denied)
(stating that repudiation Aconsists
of words or actions by a contracting party that indicate he is not going to perform
his contract in the future@).  Appellees=
pleadings indicate that they Aremain
ready, willing and able to pay the purchase price, [and] any prepayment
penalty, and will perform any other obligations they have.@  Moreover, they presented summary judgment
evidence that they were ready, able, and willing to perform these obligations,
including paying the entire prepayment penalty,[6]
on September 30, 2005.  Thus, we conclude
and hold that the trial court did not abuse its discretion by determining, upon
the undisputed facts set forth in the summary judgment record, that specific
performance is an appropriate remedy for appellees.  See Longfellow v. Racetrac Petroleum, Inc.,
No. 02-06-00124-CV, 2008 WL 2404233, at *2B3, 5
(Tex. App.CFort Worth June 12, 2008, pet.
filed) (mem. op.).

c.      Validity
and Enforceability of Original Contract








Paciwest additionally contends that the original
contract is neither valid nor enforceable because it is not supported by
consideration and lacks mutuality of obligation.  Specifically, Paciwest claims that the contract
obligates Warner Alan to purchase the property only if it receives the lender=s
approval of the loan assumption but that it is not under any obligation to seek
such approval and that it could simply terminate by failing to seek such approval.  Thus, according to Paciwest, it had the
obligation to sell the property at all times, but Warner Alan never had the
obligation to purchase it.

Paciwest=s
argument fails to take into account the evidence showing that it had agreed to
amend the contract to provide that Warner Alan would pay off Paciwest=s loan
at closing; upon that agreement, Warner Alan was obligated to fund the purchase
price at closing if it failed to terminate during the bargained-for inspection
period.  Moreover, numerous contract
provisions bind both Warner Alan and Paciwest. 
Section 1.3, describing the initial escrow to be deposited by Warner
Alan, specifically states that if Warner Alan terminates the contract by right
under the contract, Paciwest would be entitled to $100 of the initial escrow
deposit as independent consideration for the contract.

As to Paciwest=s
argument that Section 4.4 of the contractCwhich
states in one part that Warner Alan=s Afailure
to obtain Lender=s approval of the proposed
assumption in a manner consistent with [section 4.4] shall not be a default by
[Warner Alan] under [the contract], but shall entitle [Warner Alan] to
terminate [the contract], [and] receive a refund of the Escrow Deposit@Callowed
Warner Alan to avoid any obligation under the contract by simply failing to
seek the lender=s approval of the loan
assumption, Paciwest reads this single sentence of section 4.4 out of
context.  The beginning of the provision
obligates Warner Alan to, 








[w]ithin five (5)
business days after [its] receipt of Lender=s list of required information, . . . apply to
Lender for its consent to [Warner Alan=s] acquisition of the Property pursuant to this
Agreement and for permission to assume the Note, and thereafter [to]
diligently seek to obtain Lender=s approval of such application.  [Emphasis added.]

Thus, even the provision pointed to by Paciwest, when read in its
entirety, shows that both parties were mutually obligated under the contract,
regardless of the termination rights available to Warner Alan.  We conclude and hold that the summary
judgment record shows that the contract, as initially entered into and as
amended, was supported by adequate consideration.  See Alex Sheshunoff Mgmt. Svcs, Inc. v.
Johnson, 209 S.W.3d 644, 658 (Tex. 2006).

We overrule Paciwest=s first
issue.

d.     Whether
Trial Court Should Have Granted Paciwest=s Motion








Paciwest=s second
issue incorporates the arguments in its first issue that Westcliff is not
entitled to specific performance of the contract.  However, it also argues that if this court
does hold that the trial court did not err by determining that Westcliff is
entitled to specific performance, there are nevertheless fact issues precluding
summary judgment.  Specifically, it
contends that there are fact issues concerning Awhether
any agreement existed as to the different terms or modifications alleged by
Warner Alan and accepted by the Trial Court.@  However, Paciwest cites no other evidence
that was not already discussed in its first issue, and we discern no fact
issues precluding the trial court=s grant
of summary judgment in appellees=
favor.  Thus, we overrule Paciwest=s second
issue.

                                           Cross-Appeal

In a single issue on
cross-appeal, appellees challenge the trial court=s ruling
that the only relief to which they are entitled is specific performance.

This ruling occurred as a result of Paciwest=s Robinson
challenge to appellees= damages
expert.  The trial court held a hearing
on Paciwest=s objections on May 17,
2007.  At the hearing, the trial court
specifically directed the parties to brief whether appellees were entitled to
additional damages having elected to seek, and having obtained, specific
performance.

After taking the issue under advisement, on June
18, 2007, the trial court sent the parties a letter stating that 

[i]t appears that Texas
law favors [Paciwest=s] Objections to
Reliability and Foundation of Opinions of Dr. Frank Voorvaart.  I agree with [Paciwest] that [appellees=] remedies are limited to
those allowed by the terms of the contract and there is no contractual
foundation for Dr. Voorvaart=s damage opinions because [appellees] sought and
obtained summary judgment for specific performance.  

The trial court=s order incorporating this
ruling, dated June 26, 2007, states that appellees, 

having sought and obtained a summary judgment for specific
performance, have elected specific performance as their remedy;

 








Thus, the law and relevant contract provisions do not provide for the
recovery of the additional damages sought by [appellees] in this case;

 

That the matters to which Dr. Voorvaart was designated to testify are
directed at these additional damages;

 

That [Paciwest=s] [o]bjections are well
taken and should be SUSTAINED, that Dr. Voorvaart=s opinions should be
STRICKEN, and that [appellees] should be prohibited from presenting the
testimony and opinions of Dr. Voorvaart at the time of trial.  It is therefore,

 

ORDERED, ADJUDGED, and DECREED that [Paciwest=s] Objections and
Supplemental Objections to Reliability and Foundation of Opinions of Dr. Frank
Voorvaart are SUSTAINED, Dr. Voorvaart=s opinions are hereby STRICKEN, and that [appellees]
are prohibited from presenting any of the Dr. Voorvaart=s testimony and opinions
at trial.

 

Although Paciwest contends that the trial court could have based its
ruling on its other objections to Dr. Voorvaart=s
testimony, construing the trial court=s order
as a whole to give effect to all provisions, we conclude that the trial court=s ruling
was based solely on its conclusion that damages were no longer available to
appellees after they had already elected to seek, and had obtained, specific
performance as a remedy.  See Shanks
v. Treadway, 110 S.W.3d 444, 447 (Tex. 2003).  Thus, we will confine our analysis to the
trial court=s specific ruling.[7]








The general rule is that damages constitute an
alternative remedy available only when specific performance either is not
sought or is not available.  Foust v.
Hanson, 612 S.W.2d 251, 253 (Tex. Civ. App.CBeaumont
1981, no writ); see Heritage Housing Corp. v. Ferguson, 674 S.W.2d 363,
365 (Tex. App.CDallas 1984, writ ref=d
n.r.e.).  But in appropriate
circumstances, the court may order, in addition to specific performance,
payment of expenses incurred by plaintiffs as a result of a defendant=s late
performance.  Heritage Housing Corp.,
674 S.W.2d at 365B66; Foust, 612 S.W.2d at
253B54.  This compensation is not considered breach of
contract damages, but rather Aequalizes
any losses occasioned by the delay by offsetting them with money payments.@  Heritage Housing Corp., 674 S.W.2d at
366.  Thus, for example, a purchaser may
recover the rental value of property from the time of its demand for
performance and tender of the purchase price. 
Id.








Here, appellees pled for, among other things,
lost rental, increased construction costs, and an increased interest rate on
their third party financing as a result of Paciwest=s delay
in performing its obligations under the contract.  Because post-closing damages such as these
are not in the nature of benefit of the bargain damages, but rather an
accounting between the parties pending performance of the contract, we conclude
and hold that the trial court erred by determining that appellees were
precluded from seeking and presenting evidence as to these types of damages at
trial.

We sustain appellees= sole
issue in their cross-appeal.

                                             Conclusion

Having overruled Paciwest=s three
issues, we affirm the part of the trial court=s
judgment incorporating its summary judgment rulings in favor of appellees.  Having sustained appellees= sole
issue in their cross-appeal, however, we reverse that part of the trial court=s
judgment barring appellees from recovering damages attributable to Paciwest=s delay
in performing the contract.  We remand
that part of the case to the trial court for consideration of Paciwest=s other
objections to the testimony of appellees= damages
expert and for further proceedings as to those alleged damages consistent with
this opinion.

 

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT,
and MCCOY, JJ.

DELIVERED:  September 11, 2008 











[1]Warner Alan assigned its
rights and duties as purchaser under the contract to Westcliff sometime in
September 2005.  The assignment document
does not show the exact date the assignment occurred.





[2]See River E. Plaza,
L.L.C. v. Variable Annuity Life Ins. Co., 498 F.3d 718, 719, 721 (7th Cir.
2007); George Lefcoe, Yield Maintenance and Defeasance:  Two Distinct Paths to Commercial Mortgage
Prepayment, 28 Real Est. L.J. 202, 202B03 (2000).





[3]Paciwest contends that
any agreement the parties did come to was indefinite because Warner Alan did
not specifically agree in writing to pay the prepayment penalty.  However, Warner Alan=s letter indicating that
it chose to seek third party financing did not indicate that it would not pay
any prepayment penalty, nor did it attempt to change the terms of Nguyen=s offer in any way.  Cf. Cessna Aircraft Co. v. Aircraft
Network, L.L.C., 213 S.W.3d 455, 465B466 (Tex. App.CDallas 2006, pets. denied) (AAn acceptance must be
identical to the offer, or there is no binding contract.@); Harris v. Balderas,
27 S.W.3d 71, 77 (Tex. App.CSan Antonio 2000, pet. denied) (AIf the purported
acceptance contains terms that materially change the offer, the acceptance is
actually a rejection and counter-offer.@). 
Additionally, by failing to pay the assumption fees, Warner Alan
indicated its acceptance of Nguyen=s offer on the terms outlined in his letter,
which include the payment of any prepayment penalty.  See United Concrete Pipe Corp. v.
Spin-Line Co., 430 S.W.2d 360, 364 (Tex. 1968) (holding that performance
may be valid acceptance).





[4]See also Rus-Ann Dev.,
Inc. v. ECGC, Inc., 222 S.W.3d 921, 927 (Tex. App.CTyler 2007, no pet.); 17090 Parkway, Ltd. v.
McDavid, 80 S.W.3d 252, 258 (Tex. App.CDallas 2002, pet. denied); Wilson v. Klein,
715 S.W.2d 814, 822 (Tex. App.CAustin 1986, writ ref=d n.r.e.).





[5]This case is thus
distinguishable from Riley v. Powell, in which this court held that
actual tender was required when the seller decided not to close after reviewing
closing documents drafted by the purchaser, a real estate broker who also
represented the seller.  665 S.W.2d 578,
580B81 (Tex. App.CFort Worth 1984, writ ref=d n.r.e.).





[6]Neill averred in his
affidavit that additional funds were available at closing to supplement the
$250,000 paid toward the prepayment penalty.





[7]Accordingly, appellees
were not required to make an offer of proof to preserve this argument, as
Paciwest contends.  See Echols v.
Wells, 510 S.W.2d 916, 919 (Tex. 1974); Lewis v. Lewis, 853 S.W.2d
850, 852 (Tex. App.CHouston [14th Dist.]
1993, no writ).